*In re* GREGORY RAY *et al.*, Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAMELA RAY, Defendant-Appellant.)

Fifth District No. 79-465

Opinion filed September 18, 1980.

George R. Ripplinger, Jr., of Belleville, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Respondent Pamela Ray appeals from the judgment of the Circuit Court of St. Clair County terminating her parental rights to her three children, Gregory Ray, age 6, Tamidj Agnew, age 5, and Latresha Ray a/k/a Latresha Agnew, age 2. Specifically, respondent attacks the constitu-

tionality of section 1D(f) of the Adoption Act (Ill. Rev. Stat. 1979, ch. 40, par. 1501D(f)), insofar as it provides that "* * * a criminal conviction resulting from the death of any child by physical abuse * * *" constitutes a ground for a finding of parental unfitness.

The Department of Children and Family Services filed a petition in the trial court alleging that the children were neglected and the respondent was an unfit parent, and requesting that the children be adjudicated wards of the court, that the respondent be adjudicated unfit and her parental rights terminated, and that a guardian be appointed with power to consent to adoption. Subsequently, the respondent was convicted of murder and cruelty to children and sentenced to concurrent terms of 20 and 2 years. The victim was respondent's daughter, Sheritta Agnew, who was 17 months of age at the time of her death. We affirmed the respondent's conviction, and the supreme court denied leave to appeal. *People v. Ray* (1979), 80 Ill. App. 3d 151, 399 N.E.2d 977, *appeal denied* (1980), 81 Ill. 2d 586.

Following respondent's conviction, the State filed a motion for summary judgment in the instant proceeding alleging that no material issue of fact existed concerning the respondent's unfitness under section 1D(f) of the Adoption Act, and requesting that the respondent be found unfit and her parental rights terminated. Subsequently, the court granted this motion. Also, in proceedings not challenged here, the court found the children neglected as alleged in the petition, adjudicated them wards of the court, and entered guardianship orders.

Respondent contends that the statute violates equal protection and due process. The State asserts that the applicable equal protection standard is whether the statutory classification is rationally related to a legitimate governmental purpose, rather than the "strict scrutiny" analysis of whether the classification is necessary to promote a compelling governmental interest. The respondent apparently concedes that the rational relationship test applies, for in her brief it is said that the "determining question" is whether "* * * the classification is reasonable in light of its purpose * * *."

The parties have not cited nor are we aware of any case in which our own supreme court or the United States Supreme Court has squarely decided the appropriate test for an equal protection challenge to a statutory ground for a finding of parental unfitness. However, in *Regenold v. Baby Fold, Inc.* (1977), 68 Ill. 2d 419, 369 N.E.2d 858, *appeal dismissed* (1978), 435 U.S. 963, 56 L. Ed. 2d 54, 98 S. Ct. 1598, our supreme court did review a mother's claim that her consent to adoption was procured by fraud and duress and her constitutional attack on the law concerning termination of parental rights by consensual adoption. In considering the constitutionality of the legislative restriction on revocability of parental consent, the court balanced the State's *parens patriae* authority to legislate

for the protection of children against the right to maintain parental ties with one's natural child. The court quoted the test stated in *Meyer v. Nebraska* (1923), 262 U.S. 390, 399-400, 67 L. Ed. 1042, 1045, 43 S. Ct. 625, 627, that parental rights "\* \* \* may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect." (68 Ill. 2d 419, 438, 369 N.E.2d 858, 866.) The court then applied this test, holding that the legislative restriction on the revocability of consent to adoption was reasonably related to the State's authority to legislate with regard to the adoption of children and for their general welfare.

Although *Regenold* involved consensual adoption, it constitutes some authority for the application of the rational relationship test here, where legislation for the termination of parental rights and protection of children is again called into question. However, the application of "strict scrutiny" would appear to be supported by a recent decision of this court. (*Helvey v. Rednour* (1980), 86 Ill. App. 3d 154, 408 N.E.2d 17.) The issue in *Helvey v. Rednour* was the constitutionality of a provision of the Adoption Act allowing nonconsensual termination of parental rights, without a judicial determination of parental unfitness, based on a finding that the parents were mentally retarded and would remain so for the forseeable future. (Ill. Rev. Stat. 1979, ch. 40, par. 1510(e).) We cited *Meyer v. Nebraska* and other more recent Supreme Court cases concerning contraceptives (*Griswold v. Connecticut* (1965), 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678; *Carey v. Population Services International* (1977), 431 U.S. 678, 52 L. Ed. 2d 675, 97 S. Ct. 2010), abortion (*Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705), and interstate travel (*Memorial Hospital v. Maricopa County* (1974), 415 U.S. 250, 39 L. Ed. 2d 306, 94 S. Ct. 1076) to support the conclusion that parental rights are "fundamental" and may not be terminated by State law unless the law advances a compelling State interest. The compelling nature of the State's interest in protecting the welfare of a child was duly noted. However, it was reasoned that not every retarded parent could be found unfit under grounds enumerated in section 1D of the Adoption Act, and that retarded parents, like others, were entitled to a judicial determination of their fitness prior to termination of their parental rights.

This last conclusion is certainly correct, and it might appropriately have been reached by simply holding that termination of parental rights based on a mere finding of mental retardation would be arbitrary and irrational under the traditional equal protection test. As in *Helvey*, the various generalized pronouncements of the Supreme Court relating to parental rights have been interpreted to establish the fundamental nature

of those rights in the context of a substantive due process analysis of Iowa parental rights' termination statutes. (*Alsager v. District Court of Polk County, Iowa* (S.D. Ia. 1975), 406 F. Supp. 10, *affirmed* (8th Cir. 1976), 545 F.2d 1137.) No doubt, the pronouncements of the Supreme Court are entitled to careful consideration, perhaps even when their relevance to the issue at hand is rather oblique at best. Nevertheless, without clear authority, we do not feel compelled to depart from the conventional analysis of whether legislation is arbitrary and irrational.

The respondent acknowledges the State's legitimate interest in protecting children who cannot protect themselves. She nonetheless argues that a parent who abuses and kills one child will not automatically mistreat her other children and that the causes of abuse can be treated and eliminated.

Laws of other States making child abuse a ground for termination of parental rights have been upheld against constitutional attack and applied to terminate rights to more than one child based on a finding of abuse of a single child. (Annot., 53 A.L.R.3d 605 (1973).) In Illinois, a finding of parental unfitness on the ground of "depravity" and termination of parental rights to a son and two daughters was affirmed solely upon evidence that the parents had sold one of the daughters into marriage. (*In re Flynn* (1974), 22 Ill. App. 3d 994, 318 N.E.2d 105.) In the context of neglect proceedings based on child abuse, it has been held that all the children of abusing parents may be found neglected even though all have not yet been abused (*In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872), although, a neglect finding in a similar case was reversed based on affirmative evidence of the mother's care and concern for the unabused child. *In re Baby Boy Butt* (1979), 76 Ill. App. 3d 587, 395 N.E.2d 1.

■■ ■ We have affirmed the respondent's conviction of murder and cruelty to children on evidence of common design and participation in her boyfriend's course of torture and abuse that resulted in the death of her child. (*People v. Ray.*) The conflict inherent in parental fitness legislation between the State's interest in legislation for the protection of children and the continuation of parental rights must be resolved in favor of the former in this case. One who would attack an allegedly unconstitutional feature of a statute must bring himself within the class to whom the law is unconstitutional. (*City of Chicago v. Lawrence* (1969), 42 Ill. 2d 461, 248 N.E.2d 71, *appeal dismissed* (1969), 369 U.S. 39, 24 L. Ed. 2d 208, 90 S. Ct. 263.) To speak hopefully of the possibility of treatment and rehabilitation or to hypothesize circumstances where a parent may abuse one child but not another would be pure speculation on the record before us. Furthermore, apart from the specific facts before us, we believe that the statute properly promotes an overriding State interest and thus with-

stands constitutional attack, whether viewed as rationally related to a legitimate State purpose or necessary to promote as compelling State interest.

Yet to be discussed is the respondent's reliance on *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208. *Stanley* held that to presume an illegitimate father unfit as a parent is contrary to the due process clause of the fourteenth amendment, and that the parental rights of an illegitimate father, like those of any other parent, could not be terminated without a judicial determination of unfitness.

The respondent argues that the statute before us also imposes an impermissible "irrebuttable" or conclusive presumption. We fail to see that the statute constitutes a conclusive presumption or a presumption in any sense.

In *Stanley*, the father was presumed unfit in the sense that, because of illegitimacy, he was required to institute a proceeding and to bear the burden of establishing parental authority for custody of his children. No such presumption was employed in the instant case. Rather, the State bore the burden of proving and did prove the respondent's unfitness on a ground we have held proper. As argued by the State, the "irrebuttable presumption" challenged by the respondent is nothing more than the relation between a fact and its legal result. In light of the undisputed facts that a defendant had a criminal conviction resulting from the death of any child by physical child abuse, the court correctly determined that there was no material issue of fact and granted summary judgment finding her unfit and terminating her parental rights.

The judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, P. J., and SPOMER, J., concur.