RW and LW, natural parents of KW, Appellants (Respondents),

v.

The STATE of Wyoming, ex rel. LARAMIE COUNTY DEPARTMENT OF PUBLIC ASSISTANCE AND SOCIAL SERVICES, Appellee (Petitioner).

No. C–88–11.

Supreme Court of Wyoming.

Jan. 3, 1989.

Marvin J. Johnson of Edwards & Johnson, Cheyenne, for appellants.

Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., and Richard E. Dixon, Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY, and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellants, RW and LW seek review of the district court's order terminating their parental rights to their natural daughter KW.

We affirm.

Appellants were convicted in federal district court of second degree murder and aiding and abetting second degree murder. On appeal, their convictions were affirmed by the circuit court of appeals. The termination of their parental rights to KW was premised on their incarceration for these convictions in accordance with W.S. 14–2–309(a)(iv).[1]

The family of RW and LW, in addition to KW, included three other children from a previous marriage of LW. One of these three children was a female child who we

---

1. "(a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:

\* \* \* \* \* \*

"(iv) The parent is incarcerated due to the conviction of a felony and a showing that the parent is unfit to have the custody and control of the child."

identify as JM. In July of 1986, JM became ill, complaining of a stomachache, vomiting and diarrhea. LW took JM to doctors on two occasions in late July and early August. She was diagnosed as having acute gastroenteritis. One of these doctors telephoned LW during the second week of August to inquire about JM's health, and LW reported her to be "fine." At this time, a friend of LW's was repeatedly urging her to seek additional medical attention because of the child's continuing illness. Although LW and her family had free access to emergency medical care at a federal facility seven days a week, twenty-four hours a day, LW told the friend that she was waiting to receive money from the child's natural father before taking her for medical treatment.

A friend of the appellants testified that both LW and RW hit JM in the face and pulled her hair after dinner in the appellants' home during the weekend of August 30, 1986. This punishment was administered because JM was so ill that she was unable to eat or ask to be excused from the table. This friend related that RW then put JM in the backyard with the dog and later immersed her in a bathtub of cold water. On September 1, 1986, RW reported to a friend that JM was dead. This friend notified emergency medical personnel; and when they arrived, they found LW clutching JM whose abdomen was unusually distended.

An autopsy revealed that the cause of death was sepsis, a blood poisoning condition caused by peritonitis from a perforated bowel. Testimony at trial established that JM had been struck in the stomach by RW with sufficient force to have caused the perforation. A forensic pathologist testified that the perforated bowel caused JM's death; that JM had suffered a severe neck injury within two days prior to her death; and that fifty-nine bruises and abrasions were found on JM's body.

KW was born on June 5, 1986, and was just over two months of age at the time JM was killed. KW was placed in foster care by order entered October 4, 1986, and neither parent has had any contact with the child since. LW voluntarily relinquished her parental rights to the other two children, who were returned to their natural father.

On January 29, 1987, verdicts of guilty were returned against RW and LW for the crimes noted above. RW was sentenced to confinement for eighty years, with a minimum of twenty-five years to be served. LW was sentenced to confinement for eighty years with a minimum of twenty years to be served. This action to terminate the appellants' parental rights to KW was initiated on May 29, 1987. The convictions of RW and LW were affirmed by the federal circuit court of appeals on February 17, 1988. At the time this action was initiated, both parents were incarcerated on their convictions. The matter came before the court for trial April 14, 1988. On April 21, 1988, an order was entered by the district court terminating the appellants' parental rights to KW.

Appellants present the following issues:
1. That the State had a burden to prove termination was the least intrusive means to accomplish the State's interest in protecting KW and that the district court erred in finding that, (a) the State had no burden of proof in that regard; and (b) that even though the State had no such burden, the evidence presented established that termination was the least intrusive means to accomplish protection of KW.
2. The district court erred in terminating parental rights based on convictions which were not final because appellants are in the process of seeking review of their convictions by means of a petition for writ of certiorari to the United States Supreme Court.

■ As to the first issue, we note that appellants' argument relies on language found in opinions of this court which decided cases involving application of W.S. 14–2–309(a)(iii). That particular subsection requires proof of three elements before parental rights can be terminated: (1) that the child has been abused or neglected by the parents; (2) that efforts to rehabilitate the family have been unsuccessful or re-

fused by the family; and (3) that the child's health would be seriously jeopardized by remaining with or returning to the parents. In discussing the second of these two elements, the language "less intrusive means" has been used by this court in discussing application of this particular element of W.S. 14-2-309(a)(iii). *Matter of Parental Rights of PP*, 648 P.2d 512, 515 (Wyo.1982); *DS v. Department of Public Assistance and Social Services*, 607 P.2d 911, 922 (n. 6) (Wyo.1980). It is readily evident that this second element of W.S. 14-2-309(a)(iii) has no application to a termination of parental rights accomplished under W.S. 14-2-309(a)(iv). Subsection (a)(iv) of W.S. 14-2-309 requires the presence of two elements: (1) that the parent is incarcerated due to conviction of a felony; and (2) that the parent is unfit to have custody and control of the child. That statute is clear on its face. We need not employ rules of statutory construction, for it is clear that the State has no burden to demonstrate the unavailability of means less intrusive than termination.

■ As their second issue, appellants contend the evidence does not establish that they are incarcerated due to the conviction of a felony because the convictions are subject to review by the United States Supreme Court and, hence, do not fulfill the "conviction" requirement of the statute. We note at the outset that the word "conviction" may have different meanings within different contexts. *State v. Ege*, 274 N.W.2d 350, 355 (Iowa 1979); 9A Words and Phrases, "Convicted; Conviction" (and associated words) (1960); Annotation, "What constitutes former 'conviction' within statute enhancing penalty for second or subsequent offense," 5 A.L.R.2d 1080 (1949) (and Later Case Service). Appellants rely in part on a line of California cases, deriving from *In re Sonia G.*, 158 Cal.App.3d 18, 204 Cal.Rptr. 498, 501–02 (1984), for the proposition that a conviction is not final for purposes of terminating parental rights where an appeal is pending. The cases cited by appellants are clearly pertinent. We need not, however, resolve any and all issues which might arise concerning the meaning of the word "convic-

tion," as employed in W.S. 14-2-309(a)(iv), in order to dispose of this case. In this case, the appellants were convicted by the jury that returned a verdict of guilty, judgment was entered on that verdict, and the judgment was affirmed in an appeal of right to the federal circuit court of appeals. We hold that these circumstances are sufficient to establish the conviction contemplated by W.S. 14-2-309(a)(iv), and that the pendency of an application for a discretionary writ of certiorari to the United States Supreme Court does not affect the status of those convictions for purposes of the statute.

AFFIRMED.

THOMAS, J., filed a specially concurring opinion in which GOLDEN, J., joined.

URBIGKIT, J., filed a specially concurring opinion.

THOMAS, Justice, specially concurring, with whom GOLDEN, J., joins.

I agree with the result reached by the majority opinion in this case. I am satisfied that the convictions of the appellants were final and, consequently, no relief is indicated because of the potential petition for certiorari.

I am concerned about the apparent limitation of a requirement which has been adopted as an aspect of the strict scrutiny standard. The strict scrutiny standard itself is designed to protect the right of familial association which we have concluded is a fundamental liberty. *DS & RS v. Department of Public Assistance and Social Services*, 607 P.2d 911 (Wyo.1980). We have held that it arises from the conflict between the fundamental liberty of familial association and the compelling interest of the State in protecting the welfare of children. *Matter of MLM*, 682 P.2d 982 (Wyo.1984); *Matter of GP*, 679 P.2d 976 (Wyo.1984); *Matter of SKJ*, 673 P.2d 640 (Wyo.1983).

**558**

The second aspect of the fourth ground for termination of parent/child legal relationships found in § 14–2–309, W.S.1977:

> "(iv) The parent is incarcerated due to the conviction of a felony and *a showing that the parent is unfit to have the custody and control of the child."* (emphasis added)

is very similar to the second element found in subsection (iii) of that statute. I am not persuaded that our prior cases have limited the less intrusive means standard to the second element of the third ground for termination of parent/child relationships, and I believe that it is an appropriate standard to apply whenever the parent/child legal relationship is to be dissolved. In *TR v. Washakie County Department of Public Assistance and Social Services*, 736 P.2d 712 (Wyo.1987), we actually described that standard in the alternative, i.e., "a less intrusive or restrictive method of protecting the child has been attempted or is impractical." *Washakie County DPASS*, 736 P.2d at 718. The trial court did not address either of these alternatives, but I am satisfied that this is an instance in which a less intrusive or restrictive method of protecting the child is impractical and, for that reason, I do join in the disposition of this case.

I would prefer that there be found in a record an articulation of those reasons which persuade a trial court that a less intrusive or restrictive method of protecting the child has been attempted and been unsuccessful, or is impractical under the circumstances. That approach would be of significant assistance to this court in considering claims that appropriate alternatives have not been pursued in the context of the standard of strict scrutiny. I also add that, given the circumstances of this case, the resolution is obvious.

Considering the potential for alternative custodial techniques which are becoming more present in our society because of the inability of governments to maintain penal institutions adequate to house all those who deserve commitment, institutional incarceration due to conviction of a felony might not automatically be imposed in every instance in the future. A parent could be convicted of a crime which did not involve the child and then be incarcerated but, instead of jail, be placed under electronically monitored custody confining the parent to the home, the block, or the neighborhood. In such a circumstance, it indeed would be appropriate to require a finding that less intrusive or restrictive methods of protecting the child have been attempted and found unsuccessful or, for some reason, were impractical. In many such instances, the child might well successfully live at home just as he or she had prior to the conviction of the parent.

I would affirm this case because of the obvious impracticality of less intrusive alternatives, but I would require that, in those instances in which the termination of parental rights is sought relying upon the fourth ground set forth in § 14–2–309, W.S.1977, there be a showing in connection with the element of unfitness that a less intrusive or restrictive method of protecting the child has been considered and abandoned as unsuccessful or found, for articulable reasons, to be impractical.[1]

URBIGKIT, Justice, specially concurring.

I concur in the result, but write additionally to perceive that something separate from incarceration is required to justify parental rights termination. That protected right of parental association as "fundamental and substantial" cannot be extinguished by incarceration alone. *Matter of GP*, 679 P.2d 976 (Wyo.1984); Note, *Family Law—Termination of Parental Rights: Establishing Standards for the Wyoming Law. In the Matter of Parental Rights to X, Y and Z, DS v. Dept. of Public Assistance & Social Services*, 607 P.2d 911 (Wyo.

---

1. I note the effort to nominate the paternal grandparents as surrogate parents here, but that arrangement is not a less intrusive means designed to preserve the familial relationship that the standard protects. It is really no different than permitting a parent whose rights are in jeopardy to nominate a foster parent, and that is not what the phrase "less intrusive or restrictive methods" connotes.

*1980),* XVI Land & Water L.Rev. 217 (1981).

The syllogism of W.S. 14–2–309(a)(iv) is not constitutionally complete if criterion one, incarceration for conviction of a felony, will then suffice to prove criterion two, unfitness, which in this case might be adduced from the extended terms given appellants in the federal penitentiary. Cf. *In Interest of J.G.,* 742 P.2d 770 (Wyo. 1987). The availability of a means, which is less intrusive than termination, is a constitutional search which may also be applicable to the incarceration termination cases. These rules, such as least intrusive and child's best interest, are introduced in termination cases to quantify kinds of evidence sufficient to justify termination of the constitutional right of filiation between parent and child. Those societal interests exist no less today in these singularly multiplying types of cases of magnified human tragedy—penal confinement.

I concur, however, in approval under the particularized circumstances of this case with the trial court's determination of a generalized category of unfitness as a separate factor for allocation of blame to the incarcerated parents. *Matter of Parental Rights to ARW,* 716 P.2d 353 (Wyo.1986). For a general test, see *DS & RS v. Department of Public Assistance and Social Services,* 607 P.2d 911 (Wyo.1980). My approval is also justified by the absence in appellate issue of any vagueness attack on the unfitness test as a constitutional perspective. *In Interest of J.G.,* 742 P.2d 770.

See Comment, *Family Law—Wyoming's New Termination of Parental Rights Statute,* XVII Land & Water L.Rev. 621, 635 (1982). Compare generally, *Alsager v. District Court of Polk County, Iowa,* 406 F.Supp. 10 (S.D.Iowa 1975), aff'd 545 F.2d 1137 (8th Cir.1976) with *People v. D.A.K.,* 198 Colo. 11, 596 P.2d 747 (1979); *Matter of Five Minor Children,* 407 A.2d 198 (Del. Supr.1979), appeal dismissed for want of a properly presented federal issue, *Doe v. Delaware,* 450 U.S. 382, 101 S.Ct. 1495, 67 L.Ed.2d 312 (Brennan and White, JJ., dissenting), reh'g denied 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981), reh'g denied 458 U.S. 1117, 102 S.Ct. 3502, 73 L.Ed.2d 1379 (1982); and *In the Interest of Brooks,* 228 Kan. 541, 618 P.2d 814 (1980).

I specially concur as justified by the facts of this case even though *parental unfitness* appears to be a somewhat ephemeral test for deprivation of the constitutional rights of a family, unless that "unfitness" is more closely defined within objective factual standards or legal principles. Whatever the test may be, it is not separately nor solely incarceration. Comment, supra, XVII Land & Water L.Rev. 621.