**In the Matter of the ADOPTION OF JLP.**

**RHF, Appellant (Respondent),**

v.

**RMC and RNC, Appellees (Petitioners).**

**No. C–88–12.**

Supreme Court of Wyoming.

May 25, 1989.

James A. Raymond of Brown, Raymond & Rissler, P.C., Casper, for appellant.

Eric A. Distad, Casper, for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant RHF appeals from an order terminating his parental rights to JLP and from a subsequent decree of adoption by which appellee RNC, as stepfather of JLP and husband of appellee RMC, adopted the minor child. Appellant, as a convicted rapist serving a lengthy prison sentence, essentially challenges the determination that he is unfit to have custody and control of the minor child.

We affirm.

Appellant states the issues as being:

## I.

WHETHER RULE 56, W.R.C.P., IS APPLICABLE TO AN ADOPTION PROCEEDING.

## II.

WHETHER THE CRITERIA OF § 14–2–308, ET SEQ., W.S.1977, MAY BE CONSIDERED IN A PROCEEDING FOR ADOPTION PURSUANT TO § 1–22–101, ET SEQ., W.S.1977.

## III.

WHETHER PETITIONERS SHOWED BY CLEAR AND CONVINCING EVIDENCE FACTS SUFFICIENT TO GRANT AN ADOPTION WITHOUT PARENTAL CONSENT.

Appellees, alternatively, describe the issues in this manner:

## I.

WHETHER Rule 56, W.R.C.P., is applicable in an action seeking the termination of parental rights and adoption?

## II.

WHETHER the criteria of W.S. 14–2–308 may be considered in an action based jointly on W.S. 1–22–101 and W.S. 14–2–308?

## III.

WHETHER Petitioners presented, by clear and convincing evidence, facts sufficient to terminate Appellant's parental rights, thereby rendering his consent to adoption unnecessary?

Although we believe that appellees have more accurately identified the issues presented by this case, we would synthe-

size as the dispositive issue: Whether or not summary judgment is available in an action to terminate parental rights and, if so, whether or not appellees established, by clear and convincing evidence, facts sufficient to terminate the parental rights of appellant in this case.

Appellant is the natural father of JLP. JLP was born on July 8, 1983. Appellant never married RMC, the child's mother, but apparently they resided together after the birth of JLP until appellant's present incarceration, which commenced upon his arrest on two rape charges in April 1985. In October 1985 appellant was sentenced to a term of twenty-five to thirty years in the Wyoming State Penitentiary in connection with the two rapes, one of which involved the rape of an elderly woman who subsequently died.

RMC and RNC were married in November 1986. In April 1987 they filed a petition for adoption wherein they sought the termination of appellant's parental rights and the adoption of JLP by RNC. As grounds for the termination of appellant's parental rights, the petition listed appellant's incarceration and unfitness pursuant to Wyo.Stat. § 14–2–309 (1977) of the termination statutes. Additionally, the petition alleged that appellant had abandoned the child and had failed to contribute to the child's support. These allegations were made pursuant to Wyo.Stat. § 1–22–110 (1977) of the adoption statutes, which provides for adoption without the consent of a natural parent.

Appellant was served with the petition at the penitentiary, and he filed various pro se pleadings in response, including a petition to establish his paternity. In July 1987 appellant filed an untimely demand for a jury trial.[1] The district court did not respond to the demand for a jury trial, and the demand apparently was deemed to have been waived as not being timely and for failure to file the requisite fee. *See* W.R.C. P. 38.[2] Appellees served a request for

---

1. The right to a jury trial in a termination proceeding is provided by Wyo.Stat. § 14–2–312 (1977).

2. Appellant does not raise as an issue on appeal the denial of his demand for a jury trial, although he does mention it in connection with his argument regarding the propriety of summary judgment. In this vein, see *LP v. Natrona*

admissions upon appellant to which he responded. Social studies were ordered and prepared in accordance with Wyo.Stat. § 14–2–314 (1977). In August 1987 a guardian *ad litem* was appointed to represent the interests of JLP, and counsel for appellant was appointed in November 1987.

After a pretrial conference held August 5, 1988, the matter was set for a hearing on October 3, 1988. Thereafter, however, appellees· filed a motion for summary judgment on the termination question. A hearing on the motion was held September 21, 1988, with the guardian *ad litem* and counsel for both parties in attendance. On October 4, 1988, the district court granted the motion, thereby terminating appellant's parental rights. The decree of adoption was entered on October 6, 1988, after a hearing held on that day.

■ As a preliminary matter, we note our agreement with appellees that this case involves only a review of a termination action decided pursuant to the termination statutes. Wyo.Stat. §§ 14–2–308 to –319 (1977). Appellant attempts to posture the case as strictly an adoption proceeding premised solely upon the adoption statutes, Wyo.Stat. §§ 1–22–101 to –116 (1977), and argues that the criteria of the termination statutes were improperly considered in the proceeding. We observe, however, that the petition for adoption requested a termination of appellant's parental rights pursuant to the termination statutes. In addition, the termination proceeding was prosecuted separately from, although incidentally to, the adoption proceeding, and the district court properly relied upon § 14–2–309 of the termination statutes in its order terminating appellant's parental rights. At the motion hearing, counsel for appellees

specifically stated that the motion was made on the basis of § 14–2–309(a)(iv). The actual adoption was accomplished in a later related proceeding. Thus, we are not reviewing an action in the nature of an adoption proceeding against a nonconsenting parent pursuant to § 1–22–110.[3] If appellant's parental rights were properly terminated, and we herein determine they were, then appellant was a stranger to the subsequent adoption proceeding and had no right to object to or participate in that proceeding. Section 14–2–317.· *See also PAA v. Doe,* 702 P.2d 1259 (Wyo.1985) (same effect under § 1–22–110(a)(vii) where father was adjudged guilty of cruelty, abuse, neglect, or mistreatment of the child —his consent to adoption was not required, and he was a stranger to adoption proceeding). Thus, we review only the propriety of the order terminating appellant's parental rights.

■ Our review of a termination of parental rights is guided by the following principles. The application of the termination statutes is a matter of strict scrutiny. *AG v. Big Horn County Department of Public Assistance and Social Services,* 762 P.2d 42 (Wyo.1988); *JG v. Quillen,* 742 P.2d 770 (Wyo.1987). Strict scrutiny is required because of the tension between the fundamental liberty of familial association and the compelling state interest in protecting the welfare of children. *PL v. Johnson County Department of Public Assistance and Social Services,* 761 P.2d 985 (Wyo. 1988); *JG,* 742 P.2d 770. The evidence supporting a termination must be clear and convincing. Section 14–2–309(a); *ZLW v. Johnson County Department of Public Assistance and Social Services,* 761 P.2d 1000 (Wyo.1988); *LP v. Natrona County*

*County Department of Public Assistance and Social Services,* 679 P.2d 976 (Wyo.1984), in which this Court upheld the trial court's denial of a jury trial to a father in a termination proceeding where the father, acting pro se, had failed to properly serve the demand and had failed to deposit the required fee.

**3.** In the order granting summary judgment, the district court indicated that, in addition to the other specific grounds for termination, appellant's abandonment of JLP supported termination. Abandonment is a ground for termination under § 14–2–309 and is also a ground for granting adoption without consent pursuant to § 1–22–110. Although it is not altogether clear, it appears the district court was relying upon the termination statute with respect to abandonment. The statutory basis of the district court's finding of abandonment is of little consequence in this case, however, since we herein hold that termination was properly granted pursuant to § 14–2–309(a)(iv) regarding incarceration and unfitness.

*Department of Public Assistance and Social Services*, 679 P.2d 976 (Wyo.1984). Due to the fundamental nature of the rights affected by a termination action, the procedures involved must satisfy due process. *LP*, 679 P.2d 976; *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Lassiter v. Department of Social Services of Durham County, North Carolina*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). *See also Blair v. Supreme Court of State of Wyoming*, 671 F.2d 389 (10th Cir.1982), wherein the Tenth Circuit noted that former Wyo. Stat. § 14–2–305(a) (1977) (repealed in 1981) provided that no order terminating parental rights may be entered without a hearing.[4]

■ Is a termination of parental rights accomplished by summary judgment after a motion hearing compatible with the foregoing principles? Generally, we think not.[5] Rarely could a petitioner establish its case under any of the various grounds available pursuant to § 14–2–309 without a full evidentiary hearing. The instant case, however, presents a situation which we believe comes within the purview of the principle, articulated by the United States Supreme Court in a related context, that "fundamental fairness may be maintained in parental rights termination proceedings even when some procedures are mandated only on a case-by-case basis, rather than through rules of general application." *Santosky*, 455 U.S. at 757, 102 S.Ct. at 1397, citing *Lassiter*, 452 U.S. 18, 101 S.Ct. 2153. In *Lassiter*, the Supreme Court held that the constitution does not require the appointment of counsel for an indigent parent in every termination proceeding and that the

decision as to whether the appointment of counsel is required is to be made in the first instance by the trial court, subject to appellate review. *Id.*, 452 U.S. at 31–32, 101 S.Ct. at 2161–62.

In *LP*, 679 P.2d 976, we held that termination proceedings are civil in nature. Section 14–2–312 specifically provides that the Wyoming Rules of Civil Procedure "are applicable in actions brought under this act." W.R.C.P. 1 reads in material part:

These rules govern procedure in all courts of record in the State of Wyoming, in all actions, suits or proceedings of a civil nature, in all special statutory proceedings except as provided in Rule 81, and in all appeals in criminal cases.

W.R.C.P. 81 provides in part:

Statutory provisions shall not apply whenever inconsistent with these rules, provided, (1) that in special statutory proceedings any rule shall not apply insofar as it is clearly inapplicable * * *.

Thus, our statutes and rules clearly contemplate that W.R.C.P. 56 regarding summary judgment is applicable in proceedings brought pursuant to the termination statutes. Additionally, the Supreme Court decisions in *Santosky* and *Lassiter* indicate the fundamental fairness and propriety of a particular procedure invoked in a termination proceeding may be reviewed on a case-by-case basis. Accordingly, we hold that summary judgment is not necessarily precluded in every termination of parental rights case, and we look to the facts in the instant case to determine if summary judgment was properly entered against appellant.

---

**4.** Section 14–2–312 of the current enactment provides that, upon the filing of a petition, the judge "shall set the petition for hearing."

**5.** The question has not been resolved uniformly in other jurisdictions. In *People v. Ray*, 88 Ill.App.3d 1010, 44 Ill.Dec. 182, 411 N.E.2d 88 (1980), *appeal dismissed sub nom. Ray v. Illinois*, 452 U.S. 956, 101 S.Ct. 3102, 69 L.Ed.2d 967 (1981), the court upheld a summary judgment terminating the parental rights of a mother convicted of murder and cruelty to children in connection with the death of one of her children. The court found there were no genuine issues of material fact on the question of

unfitness. *Cf. People in Interest of S.B.*, 742 P.2d 935 (Colo.App.1987), *cert. denied* 754 P.2d 1177 (1988) (affirming summary judgment adjudicating child dependent and neglected—an adjudication which may lead to termination as a possible remedy). *Department of Social Services v. Harold K.*, 159 Cal.App.3d 94, 205 Cal.Rptr. 393 (1984), and *Matter of Christina T.*, 590 P.2d 189 (Okla.1979), are cases holding that termination cannot be accomplished by summary judgment, although both cases relied, at least in part, upon the fact that in those states termination actions are designated as special proceedings not subject to the general rules of civil procedure.

■ Summary judgment is appropriately granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. W.R. C.P. 56(c); *Doud v. First Interstate Bank of Gillette*, 769 P.2d 927 (Wyo.1989); *St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1*, 763 P.2d 1255 (Wyo.1988).

> [W]e review the judgment in the same light as the district court, using the same information. A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts.

*Garner v. Hickman*, 709 P.2d 407, 410 (Wyo.1985) (citations omitted), *quoted in Doud*, 769 P.2d at 928, and *Albrecht v. Zwaanshoek Holding En Financiering, B.V.*, 762 P.2d 1174, 1176 (Wyo.1988).

Section 14–2–309(a)(iv) provides for the termination of parental rights where "[t]he parent is incarcerated due to the conviction of a felony and a showing that the parent is unfit to have the custody and control of the child." Termination under this paragraph of the statute requires proof, by clear and convincing evidence, of two elements: (1) that the parent is incarcerated on a felony conviction; and (2) that the parent is unfit to have custody and control of the child. *RW v. State ex rel. Laramie County Department of Public Assistance and Social Services*, 766 P.2d 555 (Wyo. 1989).

In support of their motion for summary judgment, appellees submitted or relied upon the social/home studies of appellant and appellees prepared by DPASS; appel-

lant's responses to appellees' requests for admissions; and the other pleadings and filings in the record. A review of these materials reveals the following information. In 1977 or 1978, when he was seventeen years old, appellant raped a teenage girl, using a gun to threaten her. For that offense appellant served a split sentence at the Wyoming State Penitentiary and at the Wyoming Boys' School. In 1982 appellant was convicted of aggravated assault with a hammer, and he served time in the Natrona County jail for that offense.

In March 1985 appellant raped an eighteen-year-old girl, apparently again in Natrona County. Also in March 1985 appellant raped and beat up a woman in her eighties[6] who subsequently died from the trauma. In August 1985 appellant pleaded guilty to one count of sexual assault and to one count of attempted sexual assault, and he was thereafter sentenced to a term of not less than twenty-five years nor more than thirty years in the Wyoming State Penitentiary. The materials in the record indicate appellant either refused to participate in or attended only fifteen percent of the "Specific Modalities for Sex Offenders Program" at the penitentiary. Finally, materials submitted in support of summary judgment disclose that appellant had used illegal drugs, including marijuana, cocaine, crank, amphetamines, acid, and paint fumes, from the age of seventeen until his present incarceration, although he did complete a drug and alcohol abuse program at the prison.

■ Appellant, who was represented by counsel, submitted nothing in response to the materials appellees submitted in support of their motion for summary judgment. Once the moving party has properly supported a motion for summary judgment by affidavits, answers to interrogatories, or depositions, the party opposing summary judgment cannot rely upon allegations or denials in his pleadings but must come forth with materials demonstrating a genuine issue for trial. W.R.C.P. 56; *Whipple*

---

**6.** The victim is listed variously in the record as being either eighty-two years old or eighty-seven years old.

v. *Northern Wyoming Community College Foundation of Sheridan*, 753 P.2d 1028 (Wyo.1988). *See also Jones Land and Livestock Co. v. Federal Land Bank of Omaha*, 733 P.2d 258 (Wyo.1987) (once movant has established prima facie case, burden shifts to opposing party to come forward with competent evidence of specific facts countering the facts presented by the movant). Although appellant failed to present any evidence in opposition to the motion, the district court did have before it the two social summaries which indicated that appellant was actively involved in the child's life prior to his incarceration, that he had completed a substance abuse program at the penitentiary, that he wished to maintain a relationship with the child, and that appellee RMC had not allowed JLP to visit appellant at the penitentiary.

Viewing the record in the light most favorable to appellant, we hold that appellees unquestionably established by clear and convincing evidence that appellant is incarcerated upon a felony conviction and that he has at least twenty more years to serve on his minimum sentence. Thus the first element in § 14–2–309(a)(iv) was satisfied, and there simply was no response available to appellant in opposition to the evidence on that element.

With respect to the element of unfitness, we observe that the term "unfit" is not defined in the termination statutes.[7] It seems clear, nevertheless, that incarceration alone is insufficient to establish unfitness. *See RW*, 766 P.2d at 558–59 (Urbigkit, J., specially concurring). It has been suggested, however, that unfitness might be deduced from an extended prison term. *Id. See also Zipf v. Patricia P.*, 175 Cal. App.3d 115, 220 Cal.Rptr. 525, 535 (1985) (totality of convictions could disclose a criminal propensity permitting inference that parent will be incarcerated for extended periods resulting in a substantial breach of parental duties).

Parental unfitness has been defined in other jurisdictions. In *Petition of Kauch*,

358 Mass. 327, 264 N.E.2d 371, 373 (1970) (quoting *Richards v. Forrest*, 278 Mass. 547, 180 N.E. 508, 510 (1932)), the court, in a custody context, defined unfit as meaning " 'unsuitable, incompetent, or not adapted for a particular use or service.' " That definition was quoted as being applicable to termination cases in *Wright v. Superintending School Committee, City of Portland*, 331 A.2d 640, 644 (Me.1975). In *State v. Johnson*, 214 Kan. 780, 522 P.2d 330 (1974), the court recited the above definition and noted that the word "unfit" usually imports something of moral delinquency. The court in that case also stated that " 'incapacity to appreciate and perform the obligations resting upon parents might render them unfit, apart from other moral defects.' " *Id.* at 334 (quoting *Vallimont v. Medford*, 182 Kan. 334, 321 P.2d 190, 196 (1958)). The California Court of Appeal, in *Zipf*, 220 Cal.Rptr. at 535, said that "[u]nfitness means a probability that the parent will fail in a substantial degree to discharge parental duties toward the child." Another California case, *Kay v. Boyd C.*, 93 Cal.App.3d 14, 155 Cal.Rptr. 406 (1979), involved an appeal of the trial court's finding of unfitness premised upon a felony conviction for armed burglary and a history of criminal conduct. The California Court of Appeal held that, in some circumstances, the crime of armed burglary may render the perpetrator an unfit parent and further that, with respect to present unfitness of a parent, the trial court may consider the parent's history of criminal conduct. *Id.* at 412–13.

Although neither the legislature nor this Court has precisely defined unfitness, we have had occasion to review terminations of parental rights accomplished pursuant to § 14–2–309(a)(iv). In our recent decision in *RW*, 766 P.2d 555, we upheld a termination premised upon § 14–2–309(a)(iv). In *RW*, the parental rights of both parents respecting one child were terminated subsequent to their convictions for second-degree murder and aiding and abetting in

---

**7.** *See* Comment, *Family Law—Wyoming's New Termination of Parental Rights Statute*, XVII Land & Water L.Rev. 621 (1982) (term "unfit" is vague and in need of judicial construction in absence of legislative definition).

same in connection with the murder of another of their children. The parents in that case did not directly contest the finding of unfitness, but rather they argued that the district court had erred in finding the State had no burden to prove termination was the least intrusive means to accomplish the State's interest in protecting the child. This Court determined, in a holding which failed to receive the support of a majority of the Court, that, while the least intrusive means was an element in termination cases premised upon § 14-2-309(a)(iii) regarding neglected and abused children, it had no application to terminations accomplished pursuant to § 14-2-309(a)(iv). *RW*, 766 P.2d 555. Three justices of this Court, in two specially concurring opinions, expressed disagreement with, or at least questioned, that proposition. The specially concurring opinions acknowledged, however, that, under the circumstances of the case, the unfitness was obvious and the termination was justified. *Id.* at 557–59 (Thomas, J., specially concurring, with whom Golden, J., joined, and Urbigkit, J., specially concurring).[8]

In *RDW v. GJS*, 716 P.2d 353 (Wyo. 1986), the father against whom termination was sought was, or had recently been, incarcerated in federal prison on drug charges and was shown to have been an international drug smuggler for all of his adult life. In addition, the father in that case admittedly had involved the child's mother in drug smuggling, and the mother had died while transporting drugs when a balloon containing cocaine burst in her gastrointestinal tract. In rejecting a challenge to the sufficiency of the evidence regarding unfitness, we concluded:

> It is easy for us to find a plethora of evidence sufficient to support the trial court's determination that appellant's parental rights should be terminated. In summary, " * * * if [appellant] had any

redeeming qualities, he managed to keep them fairly well concealed."

*Id.* at 355 (quoting *PAA*, 702 P.2d at 1266).

In *JG*, 742 P.2d 770, we reviewed a termination of a father's parental rights where the father had been incarcerated on a felony conviction for second-degree sexual assault against his children. The district court terminated the father's parental rights on the basis of both paragraphs (iii) and (iv) of § 14-2-309(a). On appeal the father challenged, *inter alia*, the constitutionality of paragraph (iv) of the statute, asserting that the statute lacked a standard for determining whether a parent was unfit and thus the statutory language was unconstitutionally vague. We did not reach the father's vagueness challenge because the issue had not been properly preserved for appellate review. We stated, nevertheless, that appellant's conduct as disclosed by the record "demonstrate[d] unequivocally that the appellant [wa]s an unfit parent by any standard." *JG*, 742 P.2d at 775.

We are convinced that the record in the instant case dictates a similar conclusion regarding the fitness of appellant. The materials submitted by appellees in support of their motion for summary judgment established that appellant has a consistent history of criminal activities. He has repeatedly committed forcible rapes, beginning when he was seventeen years old, culminating in the rape and death of an elderly woman for which he is now incarcerated under an extended prison sentence. The summary judgment materials also indicated that appellant has refused or at least resisted the rehabilitative program for sexual offenders available to him. Further, the district court had before it information that appellant has been a consistent user of illegal drugs from age seventeen until his present incarceration. With respect to the relationship which the length of appellant's sentence may bear to his fitness, we note

---

**8.** In the instant case appellant has not raised as an issue whether the district court improperly failed to consider the availability of a less intrusive means to accomplish the State's interest in protecting the child. Under the facts of this case, however, we are convinced that a less intrusive means to protect the child is clearly impractical. *See RW*, 766 P.2d at 558 (Thomas, J., specially concurring); and *TR v. Washakie County Department of Public Assistance and Social Services*, 736 P.2d 712, 718 (Wyo.1987).

that the child will be well into adulthood before appellant's minimum sentence expires. Relating this evidence to the various formulations and definitions of unfitness noted earlier illustrates that appellant has a long history of criminal conduct, that his crimes indicate extreme moral delinquency, that he will be unable to discharge his parental duties throughout the minority of the child, and that he is generally unsuitable to perform the requisite parental functions. This evidence, as in the *JG* case, graphically demonstrates that appellant is an unfit parent by any standard.

Appellant did not respond to this evidence submitted by appellees in support of their motion for summary judgment. Appellant contends, nevertheless, that the evidence in the record indicating that before his incarceration he was actively involved in the child's life, that he completed a substance abuse program at the penitentiary, and that he desires to maintain contact with the child is sufficient to structure a genuine issue of material fact regarding his fitness as a parent. We cannot agree. We believe that appellees have succinctly captured the essence of these contentions with the observation in their brief that, "during the same time period that Appellant contends he was being a fine father to his son, [he] was using every kind of illegal drug and raping and terrorizing women in his home town."

Appellant's failure to respond with competent opposing evidence to the summary judgment materials presented by appellees acutely demonstrates that nothing further could be gained by an evidentiary hearing. There are no issues of material fact. Appellant does not suggest, nor can we envision, that anything further could be developed in an evidentiary hearing which would refute the unequivocal showing of incarceration and unfitness made by appellees in support of their motion for summary judgment.

We have said, in the context of a termination proceeding, that due process requires a meaningful opportunity to be heard; i.e., some kind of hearing. *LP*, 679 P.2d at 987–88. In the instant case there was a hearing, albeit an abbreviated summary judgment motion hearing, at which appellant appeared through counsel.[9] Although, in response to appellees' initial showing, appellant had the burden to come forth with specific evidence to establish a genuine issue of fact, he failed to do so, and it is manifestly obvious that he could not do so. Thus, under the circumstances of this case, the applicable grounds for termination of appellant's parental rights were established by clear and convincing evidence at the summary judgment hearing, appellant was accorded adequate due process under the circumstances, and appellees were entitled to judgment as a matter of law. We emphasize and caution, however, that our decision herein reflects the specific and unusual facts presented by this case. We can foresee few other situations in which summary judgment could properly be utilized to effect a termination of parental rights.

The order terminating appellant's parental rights is affirmed, and, as a consequence, appellant's challenge to the subsequent decree of adoption will not be addressed as appellant was a stranger to that proceeding.

Affirmed.

URBIGKIT, Justice, dissenting.

In this case, the father, while incarcerated in the penitentiary, asked for an opportunity to testify in court before a decision was made to terminate his parental rights, which was denied. In the myriad of prior summary judgment cases, we had previously not gone so far as to define relations between parent and child to be excluded from at least the opportunity of the parent to present live testimony to defend a constitutional interest as parent. *See Payne v. Superior Court of Los Angeles County,* 17 Cal.3d 908, 132 Cal.Rptr. 405, 553 P.2d

---

**9.** Although appellant does not raise it as an issue, we note that it has been held that a convict has no constitutional right to personally appear in a civil termination proceeding and that due process is satisfied if the convict has been allowed to appear through counsel and by deposition. *Quenette v. Skjonsby,* 341 N.W.2d 619 (N.D.1983).

565 (1976) and *In Interest of F. H.*, 283 N.W.2d 202 (N.D.1979). In the nature of the family relationship, I do not believe that a denial of testimonial defense can ever be justifiably entrusted to summary judgment without leaving at least a scintilla of fact issue unchallenged. *Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986).

The issue here is not termination of parental rights; it is the use of summary judgment against a person incarcerated in the penitentiary who is physically denied the opportunity to provide personal testimony. Furthermore, the issue is not even appearance in person, since at least the deposition testimony of the father should have been permitted and required. *Matter of Adoption of Quenette*, 341 N.W.2d 619 (N.D.1983); *In Interest of F. H.*, 283 N.W. 2d 202. The proper test of summary judgment is not whether the trial court might make the same decision after holding a hearing; it is that an issue of fact exists in recognition that parental rights always cultivate some foliage of factual inquiry from its constitutional stem requiring a trial with a live record to assess where justice is to be found. *State ex rel. Gladden v. Sloper*, 209 Or. 346, 306 P.2d 418 (1957).

It would have been appropriate and responsive in this case, if the cost of appearance under guard was unacceptable, to provide deposition testimony by telephone arrangements which are an efficient and inexpensive mechanism. I can certainly recognize within the factual analysis comprehensively made by the majority why termination could be clearly justified. However, summary judgment should neither be elongated nor parental rights diluted by the use of affidavit instrumentation of that non-trial mechanism to terminate the most fundamental relationship—parental status. My concern is equal protection and due process as a right of a parent to defend.

The significance of the opportunity of the father to testify was forcefully recognized in analysis of a termination proceeding where this court was defendant in a Tenth Circuit Court of Appeals case, *Blair v. Supreme Court of State of Wyo.*, 671 F.2d 389 (10th Cir.1982). In *Blair*, the federal court recognized as procedural attributes:

> It is apparent from Blair's complaint and exhibits attached thereto that Judge Spangler held a full hearing at which Blair testified and was represented by counsel.

*Id.* at 391.

For the law to then be applied in denial of federal court relief:

> We recently recognized in *Wise v. Bravo*, 666 F.2d 1328 at 1331 (10th Cir.1981), that the relationship between parent and child is constitutionally protected. As such, "[t]he state's power to legislate, adjudicate and administer all aspects of family law, including determinations of custodial and visitation rights, is subject to scrutiny by the federal judiciary within the reach of the Due Process and/or Equal Protection Clauses of the Fourteenth Amendment." *Id.* at 1332.

> Recent Supreme Court opinions make it plain that the state has a compelling interest in the welfare of minor children and his authority to terminate parental rights under certain limited circumstances, so long as it makes that determination in the best interest of the child and after a hearing. *See Lassiter v. Dept. of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Quilloin v. Walcott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

*Id.* at 390.

The consideration of summary judgment in termination of parental rights cases is not lacking in available precedent. There are well-considered cases which until now appear to be without converse persuasion which reject the affidavit-based process for final issue determination in this character of constitutional right inquiry.[1] A detailed

---

1. In offering this conclusion, I do not ignore majority opinion citations. In *People v. Ray*, 88 Ill.App.3d 1010, 44 Ill.Dec. 182, 185, 411 N.E.2d 88, 91 (1980), *appeal dismissed* 452 U.S. 956, 101 S.Ct. 3102, 69 L.Ed.2d 967 (1981), where the mother was convicted of murder in the death of

analysis is found in *Matter of Christina T.*, 590 P.2d 189 (Okl.1979), which involved the similar situation of the incarcerated father. That court observed in regard to the termination proceedings pursued against the father by summary judgment:

> The question for determination in this case is whether a juvenile court action brought to adjudicate a child dependent and neglected may be decided on motion for summary judgment.
>
> \* \* \* \* \* \*
>
> Summary judgment is not applicable to juvenile proceedings. Our statutes and this Court's past decisions make it absolutely clear that a hearing on a juvenile petition is mandatory. This is, as we have stated on many occasions, a matter of highest constitutional magnitude for the fundamental integrity of the family unit which has found protection in the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Ninth Amendment, may not be intruded upon without affording parent and child due process of law. "The fundamental requisite of due process is the right to be heard. [citations omitted] The hearing required by the Due Process Clause must be 'meaningful' [citation omitted] and 'appropriate to the nature of the case' [citation omitted]. These requisites are all the more important when the judicial procedure concerns the continuance of the parent-child relationship." *York v. Halley, supra,* [534 P.2d 363 (Okl.1975)] at 365.
>
> The trial court's sustention of the state's motion for summary judgment deprived appellant and his minor daughter of their rights to due process of law.

*Id.* at 190–92 (footnotes omitted).

Similar conclusions denying access to summary judgment for termination of pa-

rental right cases are found in *Matter of Matthew S.*, 201 Cal.App.3d 315, 247 Cal. Rptr. 100 (1988); *In re Mark K.*, 159 Cal. App.3d 94, 205 Cal.Rptr. 393 (1984); and *In re Henson*, 77 Misc.2d 694, 354 N.Y.S.2d 774 (1974). *Cf. State v. James*, 38 Wash. App. 264, 686 P.2d 1097 (1984) for paternity analysis.

The policy concepts expressed by those authorities are not singularly different from what we earlier said in *DS and RS v. Department of Public Assistance and Social Services*, 607 P.2d 911, 919 (Wyo.1980):

> We admonish that the burden of proving neglect or abuse is upon him who seeks to take the child from the parent. We emphasize that the trial court and the appellate court will strictly scrutinize claims that a natural parent is unfit because of abuse or neglect. This means that the court's duty to protect the child will be balanced against its duty to protect democratic values.

To me, this strict scrutiny defines an actual hearing with live witnesses and the father afforded at least a chance to appear by deposition, if not in person. See review of law journals directed generally to the subject of parental rights in *In Interest of J.L.*, 761 P.2d 985, 987 n. 2 (Wyo.1988). The foundational law has been established in a course of constitutional decisions by the United States Supreme Court as founded upon *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), followed by the commitment case of *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), and more recently including *Lassiter v. Department of Social Services of Durham County, North Carolina*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed. 2d 640, *reh'g denied* 453 U.S. 927, 102 S.Ct.

---

another child, the subsequent use of summary judgment in a termination proceeding was not presented as an appellate issue after the court had "affirmed the respondent's conviction of murder and cruelty to children on evidence of common design and participation in her boyfriend's course of torture and abuse that resulted in the death of her child. (*People v. Ray* [, 80 Ill.App.3d 151, 35 Ill.Dec. 688, 399 N.E.2d 977 (1979) ] )." The presented appellate issue of the second case was constitutional equal protection

in challenging statutory grounds for the finding of parental unfitness. *Ray*, 44 Ill.Dec. at 184, 411 N.E.2d at 90. In the Colorado case, *People in Interest of S.B.*, 742 P.2d 935 (Colo.App.1987), *cert. denied sub nom. N.B. v. People*, 754 P.2d 1177 (Colo.1988), termination was not then an issue where the father was in jail awaiting trial for the first degree murder of the mother and the dependent and neglected status of the daughter was clearly self-evident with one parent jailed and the other deceased.

889, 69 L.Ed.2d 1023 (1981) and *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). *See also,* Annotation, *Parent's Involuntary Confinement, or Failure to Care for Child as Result Thereof, as Evidencing Neglect, Unfitness, or the Like in Dependency or Divestiture Proceeding,* 79 A.L.R.3d 417 (1977 & 1988 Supp.).

I respectfully dissent but further point out anxiously that unexpended and unexcused efforts to at least provide deposition testimony in the future should indeed confine this decision "to a few other situations," but preferably to leave it as only one of a kind.