In the INTEREST OF KODY D.V., a Person Under the Age of 18:
MONROE COUNTY, Petitioner-Appellant,

v.

JENNIFER V., Respondent-Respondent.

Court of Appeals

*No. 95–3062. Submitted on briefs January 17, 1996.—Decided March 4, 1996.*

(Also reported in 548 N.W.2d 837.)

For the petitioner-appellant the cause was submitted on the brief of *Kerry Sullivan-Flock* of *Monroe County Corporation Counsel*.

For the respondent-respondent the cause was submitted on the brief of *Penny J. Precour* of *Mubarak & Radcliffe, S.C.* of Tomah.

Before Eich, C.J., Dykman and Vergeront, JJ.

VERGERONT, J.[1]  Monroe County appeals from an order dismissing without prejudice its petition for termination of Jennifer V.'s parental rights to her minor child, Kody. The petition asserted § 48.415(5)(a), STATS., as a ground for termination—that the parent has caused death or injury to a child resulting in a felony conviction. The issue presented on appeal is whether such a conviction may be the ground for termination of parental rights when an appeal of the

---

[1] This appeal was originally assigned as a one-judge appeal under § 752.31(2)(e), STATS. It was reassigned to a three-judge panel by order of the chief judge dated January 25, 1996. *See* RULE 809.41(3), STATS. This appeal has been expedited, *see* § 809.107(6)(e), STATS., and we extended the court's deadline to enable the panel to fully consider the matter. *See* RULE 809.82(2)(a), STATS.

conviction is still pending. We conclude that the term "conviction," as used in § 48.415(5)(a), means a conviction after the right of appeal has been exhausted. We therefore affirm the dismissal.

The petition for termination of parental rights alleged the following. Jennifer was found guilty by a jury on November 12, 1994, of recklessly causing great bodily harm to Kody, in violation of § 948.03(3)(a), STATS., a felony. The crime was committed on or about January 6, 1994. Jennifer was sentenced on March 8, 1995, to five years in the Wisconsin State Prison System. A certified copy of the amended judgment of conviction was filed with the petition.

Monroe County moved for summary judgment[2] on the ground that there was no factual dispute that Jennifer was convicted as alleged in the petition and that therefore, as a matter of law, a ground for termination of parental rights under § 48.415(5)(a), STATS., existed.[3] At the hearing on the motion, Jennifer's counsel informed the court that the process for appealing the conviction had been initiated and the present status was that the court of appeals had extended the time

---

[2] In *In re Philip W.*, 189 Wis. 2d 432, 525 N.W.2d 384 (Ct. App. 1994), we held that summary judgment is inappropriate in involuntary termination of parental rights cases because the parent is entitled to a fact-finding hearing before parental rights are terminated. *Id.* at 436-37, 525 N.W.2d at 385-86. Whether Monroe County's motion for summary judgment is permissible is an issue not before this court.

[3] In its motion, Monroe County did not seek a termination of parental rights, only a ruling that a ground for termination had been established. The motion implicitly recognized that, even though a ground for termination of parental rights is established, whether to terminate parental rights is within the discretion of the court. *In re K.D.J.*, 163 Wis. 2d 90, 104-05, 470 N.W.2d 914, 920-21 (1991).

to complete and file the transcript in the criminal proceeding. Her counsel argued that the motion for summary judgment was "premature" as long as an appeal was pending. The trial court concluded that a conviction was not a conviction within the meaning of § 48.415(5)(a) until all appellate remedies were exhausted. It denied the motion for summary judgment and dismissed the petition, without prejudice, so that the petition could be filed later if the conviction were affirmed.

Monroe County argues on appeal that "conviction" in § 48.415(5)(a), STATS., means a conviction at the trial level and that it is irrelevant whether an appeal is pending or, by implication, what the decision of the appellate court is. Jennifer argues that conviction means a final conviction after an appeal. "Conviction" is not defined in ch. 48, STATS.

The interpretation of a statute presents a question of law, which we review de novo. *State v. Wittrock*, 119 Wis. 2d 664, 669, 350 N.W.2d 647, 650 (1984). The purpose of statutory construction is to ascertain the intent of the legislature and, in doing so, our first resort is to the language of the statute itself. *State v. Eichman*, 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990). If the statutory language is not ambiguous, that is the end of our inquiry; we simply apply the language to the case at hand. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68, 74 (1992). If the statute is ambiguous, meaning that more than one reasonable meaning can be attributed to it, then we examine the scope, history, context, subject matter and object of the statute in order to determine the legislative intent. *Id.* at 247-48, 493 N.W.2d at 74.

Section 48.415(5), STATS., provides as one ground for termination of parental rights:

> CHILD ABUSE. Child abuse may be established by a showing that the parent has exhibited a pattern of abusive behavior which is a substantial threat to the health of the child who is the subject of the petition and a showing of either of the following:
>
> (a) That the parent has caused death or injury to a child or children resulting in a felony conviction.
>
> (b) That, on more than one occasion, a child has been removed from the parent's home by the court under s. 48.345 [disposition of a child adjudged in need of protection or services (CHIPS)] after an adjudication that the child is in need of protection or services and a finding by the court that sexual or physical abuse was inflicted by the parent.[4]

Before construing the term "conviction" in para. (a), we must address the language preceding paras. (a) and (b). This language plainly requires that, for *all* terminations under § 48.415(5), STATS., there must be a showing that the parent has exhibited a pattern of abusive behavior which is a substantial threat to the health of the child. In *addition*, there must be a showing under either para. (a) or para. (b).

The petition must state the grounds for termination relied on under § 48.415, STATS., and "a statement

---

[4] A child may be adjudged in need of protection or services if the child has been the victim of sexual or physical abuse by other than accidental means, § 48.13(3), STATS., or is at substantial risk of becoming the victim of sexual or physical abuse based on reliable and credible information that another child in the home has been a victim. Section 48.13(3m).

of the facts and circumstances which the petitioner alleges establish these grounds." Section 48.42(1)(c)2, STATS. In reviewing the sufficiency of a pleading in a juvenile court proceeding, we may draw reasonable inferences from the allegations in the petition. *In re L.A.T.*, 167 Wis. 2d 276, 284, 481 N.W.2d 493, 497 (Ct. App. 1992). The petition does not contain any allegations that Jennifer engaged in a pattern of abusive behavior. Nor do the allegations give rise to a reasonable inference that Jennifer has exhibited a pattern of abusive behavior toward Kody because only a single crime, committed on or about January 6, 1994, is alleged.

This deficiency in the petition was not argued before the trial court, nor is it argued on appeal. Apparently, both parties are of the view that a conviction, however defined, for a felony that caused death or injury to a child constitutes a ground for termination of parental rights. That is incorrect. Since the petition does not contain any statements that can be reasonably construed as alleging a pattern of abusive behavior which is a substantial threat to the health of Kody, the petition could have properly been dismissed for that reason.

We will proceed, nonetheless, to address the issue of the proper construction of the term "conviction." Affirming a dismissal on the ground that the petition does not allege a pattern of abusive behavior may result in the filing of another petition that alleges both a pattern of abusive behavior by Jennifer and contains the same allegations regarding the conviction. The issue of the construction of the term "conviction" was decided by the trial court and has been briefed by the parties. In the interest of avoiding unnecessary delay in a TPR proceeding, we turn to that issue now.

We conclude that the meanings of conviction offered by Monroe County and by Jennifer are both reasonable in the context of § 48.415(5), STATS. A judgment of conviction is entered by the trial court after a verdict of guilty by the jury, a finding of guilty by the court in cases where a jury is waived, or a plea of guilty or no contest. Section 972.13(1), STATS. It is therefore reasonable to interpret "conviction" in § 48.415(5)(a) as the judgment of conviction entered by the trial court, as Monroe County contends. On the other hand, an appeal is an integral part in our judicial system for a final adjudication of guilt or innocence and serves to protect a defendant against errors in the criminal proceedings. *State v. McDonald*, 144 Wis. 2d 531, 536-37, 424 N.W.2d 411, 413-14 (1988). A defendant has both a statutory and a constitutional right to an appeal. *Id.* at 536-37, 424 N.W.2d at 414. It is therefore reasonable to interpret § 48.415(5)(a) to mean a conviction after the completion of the appeal as of right.

We have found the term conviction ambiguous in another context. In *State v. Wimmer*, 152 Wis. 2d 654, 449 N.W.2d 621 (Ct. App. 1989), we were presented with two meanings for conviction as used in the habitual criminality statute, § 939.62, STATS.: (1) a finding of guilt (in that case, after a guilty plea), and (2) the entire legal process resulting in a judgment and sentence. *Id.* at 658, 449 N.W.2d at 622. We decided that there were at least two possible meanings of conviction and the term was therefore ambiguous. *Id.* We concluded that, in the context of that statute, the correct meaning was a finding of guilt. *Id.* at 659, 449 N.W.2d at 622. *Wimmer* does not resolve the issue presented here because

it does not address the effect of a pending appeal on the meaning of conviction.[5]

We must consider the nature of TPR proceedings, including the constitutional implications in determining which of these meanings the legislature intended.[6] A parent's interest in his or her child is a fundamental liberty interest that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *In re Philip W.*, 189 Wis. 2d 432, 436, 525 N.W.2d 384, 385 (Ct. App. 1994). The State's ability to deprive a person of that fundamental right must be justified by a compelling state interest and the infringement on the fundamental liberty to one's child must be narrowly tailored to serve that compelling interest. *In re Amanda A.*, 194 Wis. 2d 627, 639, 534 N.W.2d 907, 911 (Ct. App. 1995). The State's power to terminate parental rights requires that the power be justly exercised. *In re Philip W.*, 189 Wis. 2d at 437, 525 N.W.2d at 386. The constitutional protection afforded parents prohibits the termination of parental rights unless the parent is unfit, *In re J.L.W.*, 102 Wis. 2d 118, 136, 306 N.W.2d 46, 55 (1981), and requires that unfitness be proved by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982).

[5] The same is true of *State v. Smet*, 186 Wis. 2d 24, 519 N.W.2d 697 (Ct. App. 1994), cited by the dissent. *Smet* followed *Wimmer*'s construction of conviction. As in *Wimmer*, the context in *Smet* was sentencing.

[6] The dissent cites a number of cases from other jurisdictions that construe the term "conviction" as used in various statutes that are unrelated to TPR proceedings. We do not consider the reasoning of these cases to be persuasive on the question of how to construe "conviction" in § 48.415(5), STATS.

We must also consider the purposes of proceedings under ch. 48, STATS., and TPR proceedings in particular. The pertinent purposes stated by the legislature are: to provide procedures through which children and other interested parties are assured of a fair hearing and of the protection of their constitutional rights while protecting the public safety, § 48.01(1)(a); to provide for the care, protection and wholesome mental and physical development of children, preserving the unity of the family whenever possible, § 48.01(1)(b); in cases of child abuse or neglect, to keep children in their homes when it is consistent with the child's best interest in terms of physical safety and physical health for them to remain at home, § 48.01(1)(e); to provide children with permanent and stable family relationships, eliminating the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their return to the family, § 48.01(1)(g); to promote the adoption of children into stable families rather than allowing them to remain in the impermanence of foster care, § 48.01(1)(gg); and to allow for the termination of parental rights at the earliest possible time after rehabilitation and reunification efforts are discontinued and termination of parental rights is in the best interest of the child, § 48.01(1)(gr).

The balancing of the child's interest and the parent's interest in a TPR proceeding is difficult, but the tension between the child's own competing interests—maintaining parental bonds wherever possible, on the one hand, and escaping intolerable, hopeless family situations, on the other—is also clear and immediate. *In re A.M.K.*, 105 Wis. 2d 91, 109, 312 N.W.2d 840, 849 (Ct. App. 1981). The public's interest similarly fluctuates between assuring a wholesome developmen-

tal setting for every child and preserving the unity of the family. *Id.*

With this background, we look again at the language of § 48.415(5), STATS. As we stated above, there are two requirements for terminating parental rights because of child abuse. One is a pattern of abusive behavior which is a substantial threat to the health of the child who is the subject of the petition. The second requirement is either that the parent has caused death or injury of a child resulting in a felony conviction, or that, on more than one occasion, a child has been removed from the parent's home by the court after a finding of abuse by the parent.[7] The second requirement of either a felony conviction or of more than one removal of a child from the home under a CHIPS disposition demonstrates the legislature's intent that *egregious conduct actually resulting in harm to a child,* as established in other judicial proceedings, is a condition for unfitness under this section. One criminal conviction is sufficient. More than one CHIPS adjudication is required because a CHIPS adjudication need not involve felonious conduct and requires a lower burden of proof—clear and convincing rather than beyond a reasonable doubt.

The consequences of adopting Monroe County's interpretation of conviction in this context is troubling. If an appeal of a judgment of conviction is pending when the termination of parental rights occurs, there is the chance the judgment may be reversed. There may be a new trial, which could result in either a guilty

---

[7] While the pattern of abusive behavior must be a substantial threat to the health of "the child who is the subject of the petition," the victim of the abuse resulting in a felony conviction or the CHIPS dispositions need not be that child. Section 48.415 (5)(a) and (b), STATS., simply refers to "a child."

verdict or an acquittal. If the reversal is due to the insufficiency of the evidence, the defendant cannot be retried. *See State v. Ivy*, 119 Wis. 2d 591, 609-10, 350 N.W.2d 622, 632 (1984). Meanwhile, the parent's rights would have been terminated and the child possibly already adopted.

The lack of finality of a conviction that is being appealed raises the question as to whether that conviction is clear and convincing evidence of parental unfitness. *See In re Sonia G.*, 204 Cal. Rptr. 498, 501 (Cal. Ct. App. 1984) (judgment of conviction that may be reversed on appeal falls short of "clear and convincing" standard of proof required for TPR proceedings); *see also In re D.D.F.*, 801 P.2d 703, 707-08 (Okla. 1990), *cert. denied*, 500 U.S. 922 (1991) (convictions pending on appeal are not final and cannot be the basis for a TPR). *But see In re T.T.*, 845 P.2d 539, 540-41 (Colo. Ct. App. 1992) ("long-term confinement" under TPR statute is ground for termination even though appeal is pending; verdict and sentence in trial court satisfies "clear and convincing" standard).[8] That lack of finality

[8] The dissent states that in three other TPR cases, other jurisdictions were faced with the same question and came to the same conclusion as the Colorado Court of Appeals did in *In re T.T.*, 845 P.2d 539 (Colo. Ct. App. 1992). We do not agree with the dissent's characterizations of these cases. In *Varnadore v. State Dep't of Human Resources*, 543 So. 2d 1194 (Ala. Civ. App. 1989), *In re Pima County Juvenile Severance Action No. S-2462*, 785 P.2d 56 (Ariz. Ct. App. 1989), and *In re Udstuen*, 349 N.W.2d 300 (Minn. Ct. App. 1984), the courts do reject the parents' contentions that parental rights should not be terminated while a criminal conviction is being appealed. However, in none of these was the court interpreting "conviction" as a statutory requirement for termination of parental rights; in each case there was evidence before the court, other than the

also does not ultimately promote permanency and stability for the child. Until the right to appeal has been exhausted, there is no certainty that the supposedly permanent arrangements made for the child will not be disrupted after a successful appeal.

For these reasons, we conclude the correct interpretation of "conviction" in § 48.415(5)(a), STATS., is a conviction after the appeal as of right has been exhausted. The appeal as of right is limited to the right to appeal to the court of appeals under § 808.03, STATS. We recognize that our interpretation will delay the initiation of TPR proceedings in those cases where neither § 48.415(5)(b) nor other sections of § 48.415 apply.[9] However, our construction defines and limits the period of that delay—the conviction is final for purposes of § 48.415(5)(a) once the appeal to the court of

---

fact of a conviction, that justified termination under the applicable statutory requirements.

In another case, *RW v. State ex rel. Laramie County*, 766 P.2d 555 (Wyo. 1989), the convictions of both parents had been affirmed by the federal court of appeals and the parents were seeking review of their convictions by means of a petition for writ of certiorari to the United States Supreme Court. The court held that a conviction affirmed in an appeal as of right was a conviction within the meaning of Wyoming's TPR statute. *Id.* at 557. The court did not decide whether affirmance in an appeal as of right was necessary to the definition of conviction.

[9] Our ruling does not prohibit evidence relating to the incident that is the subject of the criminal proceeding from being used to establish other grounds for termination. Nor does our ruling preclude the legislature from defining child abuse solely in terms of the abusive conduct itself, rather than requiring a criminal conviction for the conduct.

appeals has been exhausted.[10] We are persuaded that this construction is more consistent with the nature and purposes of TPR proceedings and, therefore, with the legislature's intent.

*By the Court.*—Order affirmed.

DYKMAN, J. (*dissenting*). Section 48.415(5)(a), STATS., provides that a parent convicted of causing death or injury to a child may have his or her parental rights terminated. The majority concludes that the term "convicted" is ambiguous, but that the legislature intended that the word means a "conviction after the appeal as of right has been exhausted." Majority op. at 690. I dissent from the majority opinion because I believe that the statute is unambiguous and that it permits termination to proceed after a trial court has entered a judgment of conviction. I believe that the common meaning which most people give to the word "conviction" is the termination of a criminal proceeding in a trial court which results in a verdict or judgment of conviction. Even if I were to agree with the majority that § 48.415(5)(a) is ambiguous, I would still disagree with its conclusion because I believe that the legislature's intent, reflected by other statutes, supports my interpretation and that the case law in this and other jurisdictions interpreting the term "conviction" is at variance with the majority opinion.

In determining legislative intent, we first resort to the statutory language. *Michael S.B. v. Berns*, 196 Wis. 2d 920, 928, 540 N.W.2d 11, 14 (Ct. App. 1995). Section 48.415(5)(a), STATS., permits termination of parental rights when a "parent has caused death or injury to a

---

[10] Criminal cases are given priority by the court of appeals. *See* WIS. CT. APP. IOP VI(2) ( JULY 15, 1991).

child or children resulting in a felony conviction." WEB-STER'S THIRD NEW INTERNATIONAL DICTIONARY 499 (1993) defines "conviction" as: "1 : the act of proving, finding, or adjudging a person guilty of an offense or crime . . . *specif* : the proceeding of record by which a person is legally found guilty of any crime esp. by a jury and on which the judgment is based." I conclude that the word "conviction" is unambiguous as used in § 48.415(5)(a), and refers only to trial court proceedings. My interpretation follows the rule set out by the Wisconsin Supreme Court in 1908, and which remained unchanged until the majority's decision today. The rule then was that the word "conviction" either signified the jury's finding that a person is guilty or it implied a judgment and sentence of the court upon a verdict or confession of guilt. *Davis v. State*, 134 Wis. 632, 638, 115 N.W. 150, 153 (1908). Both of these definitions refer to trial court and not appellate proceedings.

The majority concludes that the statute is ambiguous and that the legislature meant "conviction" to mean conviction after an affirmance by the court of appeals. It reaches this conclusion because "an appeal is an integral part in our judicial system for a final adjudication of guilt or innocence . . . ." Majority op. at 685. This is a *non sequitur*. Obviously Wisconsin has an appellate court. However, its existence does not bear on determining what the legislature meant when it used the term "conviction" in § 48.415(5)(a), STATS.

Petitions for review to the Wisconsin Supreme Court and petitions for a writ of *certiorari* to the United States Supreme Court are also integral parts of our judicial system. So are collateral attacks on criminal convictions, such as § 974.06, STATS., motions, and petitions for writs of *habeas corpus* or *coram nobis*. Further relief is also available by writs of *certiorari* or *habeas*

*corpus* in the federal courts. I see no logic in holding that only a direct appeal to this court is what the legislature intended when it used the term "conviction" in § 48.415(5)(a), STATS., nor can I see the logic in holding that further appeal or collateral attacks on criminal convictions are not relevant to this inquiry. I do not believe that these options were significant when the legislature used the word "conviction" in the several session laws leading to § 48.415(5)(a), STATS.

I interpret the majority opinion as indicating that it does not accept the reliability of a trial court conviction but that it accepts the reliability of a conviction affirmed by this court on direct appeal. The majority presumes that while further appeals and collateral attacks may produce some reversals, there will be few, if any, reversals after review by us. The majority's conclusion must be, therefore, that the benefit of quickly terminating parental rights and providing stability to a child is offset by the risk of an erroneous result in the trial court.

But this reasoning assumes that reversals of convictions for killing or injuring a child occur most often in this court on direct appeal and not from supreme court review or collateral attacks. I know of no statistics to support this assumption, and the evidence available shows that the majority's assumption is erroneous. In 1995, 1,353 criminal appeals were filed in the Wisconsin Court of Appeals. That same year, we reversed about three criminal convictions for evidence sufficiency. None of these reversals were cases dealing with convictions for injuring or killing a child. Though my search covered only published and unpublished opinions, I doubt that we would have reversed a conviction for evidence insufficiency by order, memo opinion or summary reversal. I use evidence sufficiency as the

test because in those cases, an acquittal is required. In other cases, the result is almost always a retrial. And, as the court noted in *Lewis v. Exxon Corp.*, 716 F.2d 1398, 1400 (D.C. Cir. 1983), convictions are often reinstated upon retrial.

The majority, therefore, balances the need for children to be quickly placed in stable and supportive homes against a minuscule chance that a conviction will be overturned because the state did not prove its case. It concludes that this minuscule chance outweighs the needs of the children. But statistics show otherwise.

Even if I were to agree that the word "conviction" is ambiguous, I would still conclude that § 48.415(5)(a), STATS., refers to trial court and not appellate proceedings. We know that legislative bill drafters are trained to ask questions to ensure that legislation is clear. The forward to the Wisconsin Legislative Reference Bureau's Bill Drafting Manual notes:

> It is absolutely essential that at the start of the process the attorney understands what the requester wants; otherwise, a lot of work may be done for nothing. It is not always easy to articulate the problem and often the requester is only relaying a problem raised by a constituent. The attorney must be able to establish a good line of communication from the start and be an especially good listener. The attorney must not be intimidated or afraid of "looking stupid." The attorney must make sure that both the attorney and the requester are using terms in the same way.

LEGISLATIVE REFERENCE BUREAU, *Forward to* WISCONSIN BILL DRAFTING MANUAL (1983-84).

It is hard for me to accept that both a legislator and a bill drafting attorney would use the common, diction-

ary meaning for the word "conviction" if they intended something different. One would expect that if an unusual definition of a word were intended, this would be communicated in some way.

Indeed, when the legislature intends to communicate the meaning the majority now ascribes to "conviction," the legislature has used specific language to convey that meaning. As an example, § 29.995, STATS., provides penalties for the violation of our fish and game laws. Persons convicted several times of these violations are subject to increased penalties. But to distinguish between a conviction entered by a trial court and one that is affirmed on appeal, the legislature refers to convictions which "remain of record and unreversed." Section 29.995(2), STATS. And this is not an anomaly. The concept of convictions which remain of record and unreversed is used in §§ 102.88(2), 103.965(2), 103.97(1)(b), 939.62(2m)(b) and 973.0135(1)(a)2, STATS. Had the legislature meant the term "conviction" to mean "conviction which remains of record and unreversed" it would have done so.

Courts in other jurisdictions have considered whether a "conviction" used to terminate parental rights means a conviction after the right of appeal has been exhausted. Like Wisconsin, Colorado gives primary consideration to the physical, mental and emotional conditions and needs of the child. *See* COLO. REV. STAT. § 19-3-604(3) (Supp. 1995). Like Wisconsin, Colorado emphasizes a quick resolution of juvenile matters so that a child will have a stable and secure environment. *See* COLO. REV. STAT. § 19-1-102(1.6) (Supp. 1995). In *In re T.T.*, 845 P.2d 539, 541 (Colo. Ct. App. 1992) (citations omitted), the court said:

695

[I]t is apparent that the General Assembly intended "conviction" to mean convicted upon trial. At that time, an accused has had a complete and full opportunity to be heard on the charges against her and a final judgment against her has been entered.

To hold otherwise would be to violate the important policies of the Children's Code which seek to assure a child of some degree of permanency in long-term planning and to assure the child of a stable and secure environment as soon as possible. If a termination proceeding were required to be stayed until a parent's appellate rights are exhausted, a child would have to spend an indeterminate time, perhaps a great portion of his youth, in foster or other temporary care at a time when the child needs stability and bonding in his relationships. . . .

. . . .

Our interpretation of § 19-3-604(1)(b)(III) will protect mother's fundamental liberty interest. In order to terminate parental rights pursuant to § 19-3-604(1)(b)(III), a trial court must find that the criteria of that section have been proven by clear and convincing evidence. If the trial court relies on a trial court criminal conviction and sentence, it will be relying on a judgment obtained in a proceeding in which the standard of proof was even more stringent, *i.e.*, beyond a reasonable doubt. Consequently, we rule that mother was provided due process by the trial court's and our interpretations of the term "conviction" as it applies in the context of § 19-3-604(1)(b)(III).

Other courts faced with the same question have come to the same conclusion as the Colorado Court of Appeals. In *Varnadore v. State Dep't of Human Resources*, 543 So. 2d 1194, 1196 (Ala. Civ. App. 1989), the court said:

The mother's first contention, that the termination is premature, is based on the supposition that her criminal conviction will be overturned. She insists that if that occurs, then satisfactory counseling arrangements could be made to assist her in her parenting skills. We find this argument to be based on mere speculation, to be perfunctory at best and unpersuasive.

In *In re Pima County Juvenile Severance Action No. S-2462*, 785 P.2d 56, 58 (Ariz. Ct. App. 1989) (footnote added), the court said:

> The natural father's sole basis for the requested continuance was the fact that he was appealing the murder conviction, one of the grounds upon which [the Department of Economic Security] based the [termination of parental rights] petition. There is nothing in A.R.S. § 8-533(B)(4)[1] which suggests that the juvenile court must wait for the parent convicted of a crime to exhaust all avenues of appeal before the court may proceed with a [termination of parental rights] hearing. To interpret the statute otherwise would, we believe, indefinitely delay determinations regarding children whose best

---

[1] ARIZONA REV. STAT. ANN. § 8-533(B)(4) (West Supp. 1995) provides:

> Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court may also consider the needs of the child:
>
> . . . .
>
> (4) That the parent is deprived of civil liberties due to the *conviction* of a felony if the felony of which such parent was *convicted* is of such nature as to prove the unfitness of such parent to have future custody and control of the child, or if the sentence of such parent is of such length that the child will be deprived of a normal home for a period of years.

(Emphasis added.)

interests are at risk and require expedient consideration.

In *In re Udstuen*, 349 N.W.2d 300, 305 (Minn. Ct. App. 1984) (citation omitted), the court said:

> Finally, appellant argues that the termination hearing should have been continued until after the appeal of his criminal conviction was decided. He claims that he was prevented from taking the stand on his own behalf without giving up his Fifth Amendment right against self-incrimination.
>
> At the time of the parental rights hearing, appellant had already testified at his criminal trial, waiving his privilege against compulsory self-incrimination and subjecting himself to appropriate cross-examination by the State about the criminal charges he was facing. In consideration of the particular facts and circumstances of this case, we find appellant's Fifth Amendment argument to be without merit.

California, however, holds to the contrary, reasoning that a judgment of conviction might be reversed on appeal and, therefore, does not constitute clear and convincing evidence of a conviction. *In re Sonia G.*, 204 Cal. Rptr. 498, 501-02 (Cal. Ct. App. 1984).[2] This rea-

---

[2] In *In re D.D.F.*, 801 P.2d 703, 707-09 (Okla. 1990), *cert. denied*, 500 U.S. 922 (1991), the court concluded that a provision in the Oklahoma Constitution which prohibits convicted felons from voting meant a conviction on appeal could not be used as the basis for terminating parental rights. But the court permitted the facts supporting the conviction to be used as the basis for the termination. The Oklahoma constitutional provision has been changed, though the requirement of a "final" judgment now exists by a statute requiring that a conviction be "final" before it may form the basis of a termination of parental rights judgment. *See* OKLA. STAT. ANN. tit. 26, § 4-101 (West

698

soning is not applicable in Wisconsin where reversals of criminal convictions for evidence insufficiency are rare to the point of being nearly non-existent.

Cases discussing the meaning of "conviction" but not in the context of termination of parental rights proceedings are legion. In *Lewis v. United States*, 445 U.S. 55 (1980), the Court considered 18 U.S.C. § 922(h)(1) (1979) which provided that it was "unlawful for any person . . . who has been convicted" of a felony to receive a firearm. Lewis's underlying felony conviction was flawed because he was tried without the benefit of counsel. But the Court affirmed Lewis's conviction for a felon receiving a firearm, reasoning: "The statutory language is sweeping, and its plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability . . . ." *Id.* at 60-61. The use of the word "convicted" in *Lewis* is no different from the language of § 48.415(5)(a), STATS., which provides: "That the parent has caused death or injury to a child or children resulting in a felony conviction."

In *Exxon Corp.*, 716 F.2d at 1398, the court considered a federal statute which permits a petroleum company to terminate a dealer franchise for "the conviction of the franchisee of any felony involving moral

---

1995). The Wisconsin statute in question, § 48.415(5)(a), STATS., does not use the term "final" in referring to a conviction.

In *RW v. State ex rel. Laramie County*, 766 P.2d 555, 557 (Wyo. 1989), the court declined to resolve any and all issues which might arise concerning the meaning of the word "conviction." It concluded that because both a conviction and an affirmance of that conviction on appeal were of record, a statute requiring a "conviction" for termination proceedings was satisfied. *Id. RW*, therefore, does not answer the question raised in this appeal.

turpitude." The dealer whose franchise was terminated argued that the pendency of an appeal prevented termination of the franchise until the conviction had been affirmed. *Id.* The court disagreed:

> As Exxon points out, conviction in various legal contexts typically means a judgment of guilt entered upon the jury verdict, trial court finding, or guilty plea. We will rehearse only a few illustrations which suggest that the usage of "conviction" as meaning the judgment entered upon the verdict or plea and not the final affirmance upon appeal of that judgment is so common that it is highly likely Congress used the word in that sense. . . .
>
> Under the common law, the term "conviction" has, and continues to have, one of two accepted meanings—the jury verdict or the judgment entered following the verdict. Either common law construction would support our judgment in this case; the construction urged upon us by the appellant is nowhere suggested. It is also clear that the law uses the latter definition of "conviction" even where the result is to impose considerable hardship upon the person convicted. Thus, legislation providing for the exclusion from public office of persons "convicted" of perjury required the removal of a public official while his conviction was on appeal. A union official is automatically removed from office upon conviction even though he is appealing that conviction. This usage of the term "conviction" is almost universal and it is doubtful whether Congress would ascribe an extraordinary meaning to the word without stating that it was doing so.
>
> . . . .
>
> If the ground for termination is the ultimate veracity of the conviction, there is no reason to draw the line at the exhaustion of all direct appeals. If the conviction were ultimately reversed on a collateral

attack, the result would be the same: the franchisee would have been terminated despite the fact that he was no longer a convicted felon. *The logic of Lewis' position, though counsel sought to disown it, would prevent termination during all collateral attacks, which is to say that it would prevent termination.*

*Id.* at 1399-1400 (citations and footnote omitted; emphasis added).

Even in a death penalty case, a court has held that evidence of a prior conviction of murder could be used in the penalty phase of the trial notwithstanding the fact that review of the prior conviction was still pending on appeal. *People v. District Court*, 554 P.2d 1105 (Colo. 1976) (*en banc*). The court said:

> In the statute under consideration the legislative intent is apparent that the term "convicted" means convicted upon trial. If a sentencing hearing were to be postponed until all appeals of another case or cases had been finally determined, the resulting situation would be chaotic. Further, the statute provides that the sentencing hearing should be before the same jury which tried the defendant's guilt. Obviously, an empanelled jury cannot be held in cold storage for thawing out and use years later.

*Id.* at 1106.

Wisconsin courts have discussed this issue too, though not in the context of § 48.415(5)(a), STATS. In *State v. Wimmer*, 152 Wis. 2d 654, 658, 449 N.W.2d 621, 622 (Ct. App. 1989), we expanded *Davis* and concluded that there were "at least" two meanings for the word "conviction": (1) a popular meaning indicating a finding of guilt; or (2) a more technical legal meaning referring to the entire procedural process resulting in a judgment and sentence. We deleted the "at least" language of *Wimmer* and returned to the *Davis* definition

in *State v. Trudeau*, 157 Wis. 2d 51, 53, 458 N.W.2d 383, 384 (Ct. App. 1990).

And in *State v. Smet*, 186 Wis. 2d 24, 30, 519 N.W.2d 697, 699 (Ct. App. 1994), we relied upon *Wimmer* and concluded that "conviction" meant an adjudication of guilt by the trial court for the purpose of determining a defendant's place within the sentencing guidelines. We reasoned that a uniform definition of "conviction" was the best policy. *Id.* We said:

> While *Wimmer* dealt with the meaning of the word "conviction" in context of the repeater statute, we see no reason to deviate from the same definition here. *Consistency promotes both certainty and a uniform application of the law.*

*Id.* (emphasis added).

Overruling the uniform meaning of "convicted" we adopted in *Smet* is a step backward. After *Smet*, there was no reason for trial courts to consider a different meaning for the word "convicted."

The majority has, in effect, balanced the rights of children with the rights of their parents in termination proceedings and has concluded that the harm to the parent outweighs the additional year or years of uncertainty to the child. But I do not think that the majority's analysis can be reconciled with *Wimmer*. The right in *Wimmer* was the right not to have additional time added to a sentence for habitual criminality under § 939.62, STATS. *Wimmer*, 152 Wis. 2d at 656-57, 449 N.W.2d at 621-22. It is difficult to compare additional imprisonment with the loss of parental rights, but both are very significant. Why should the right to liberty advanced in *Wimmer* compel one meaning for the word "conviction" while the substantial right in this case compels a different meaning?

The word "convicted" is mentioned in the Wisconsin Statutes at least 624 times. In *Wimmer*, we determined that "convicted" refers to a finding of guilt by a trial court in the case of repeat offenders under § 939.62, STATS. In *Trudeau*, we determined that "convicted" refers to a judgment of guilt rendered by a trial court in the case of impeachment evidence under § 906.09(1), STATS. But in this case "conviction" now means conviction after affirmance by the court of appeals. In the remaining 621 instances, we are again at sea. Determining the meaning of "conviction" for each instance will be no small task.

The legislature requires that appeals in termination of parental rights cases are to be handled with great speed. Section 809.107(6)(e), STATS. This statute suggests to me that the year or years of waiting which the majority has now added to some termination proceedings cannot be the intent of the legislature. The welfare of children is not advanced by delaying termination proceedings for the year or years that the appeal process takes to be completed. Yet the majority concludes that its view of the meaning of "conviction" is more consistent with the nature and purpose of termination proceedings than the view expressed in this dissent. The majority then infers that because its view of the nature and purposes of termination proceedings permits a different meaning of the word "conviction," the legislature must also have intended that meaning. As I see it, that type of analysis substitutes "judicial intent" for "legislative intent." I do not believe that the two are, other than coincidentally, the same. I, therefore, respectfully dissent.