2004 WI App 106
In re the Termination of Parental Rights to Reynaldo F., a Person Under the Age of 18: Reynaldo F., by Guardian ad Litem, Carol C. Petersen, Petitioner-Appellant,
Modesto F., Petitioner,
v.
Christal M., Respondent-Respondent.
No. 03-2687.
Court of Appeals of Wisconsin.
Submitted on Briefs: March 2, 2004.
Opinion Filed: April 6, 2004.
On behalf of the petitioner-appellant, the cause was submitted on the briefs of Carol C. Petersen, Legal Aid Society of Milwaukee, Inc., Guardian ad Litem Division, Milwaukee.
On behalf of the respondent-respondent, the cause was submitted on the brief of Christopher L. Hartley, Milwaukee.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶1. WEDEMEYER, P.J.
Reynaldo F., by his guardian ad litem, Carol C. Petersen, appeals from an order dismissing a petition seeking to terminate the parental rights of the mother, Christal M. Petersen asks us to reverse the order and remand for a new trial based on two trial court errors: (1) the trial court erred in ruling that it had to dismiss the ground for termination based on commission of a serious felony because Christal's appeal of the conviction was still pending; and (2) the trial court erroneously exercised its discretion in excluding evidence related to the life and death of Reynaldo's twin brother, Raymon. Because the mother's appeal of her conviction was challenging solely the sentence and not her guilt, the trial court erred in dismissing the ground for termination based on Wis. Stat. § 48.415(9m) (2001-02);[2] moreover, the trial court also erroneously exercised its discretion in excluding evidence regarding Reynaldo's twin. Accordingly, we reverse the order and remand for a new trial.

BACKGROUND
¶2. On July 18, 2001, Christal gave birth to twin boys, Reynaldo and Raymon. The first nineteen days of their lives were apparently without incident. On the twentieth day, Christal became angry and frustrated by the twins' crying. She was sitting on the couch holding Raymon while Reynaldo was lying on the couch, crying. Christal stood up and threw Raymon across the room toward his car seat. His head hit the floor and a chair leg. She then placed Raymon in his car seat and secured him. Christal proceeded to pick Reynaldo up off the couch. She lifted him over her head and threw him across the room toward his car seat. Raymon died and Reynaldo sustained two fractures to his skull.
¶3. After throwing the babies, Christal went outside and sat on the front porch stoop for about thirty minutes before returning to check on the babies. When emergency personnel and the police were summoned, Christal told them that two visiting children, ages three and four, must have caused the injuries to the twins. When Christal was told that the injuries could not have been caused by young children, she confessed.
¶4. On August 10, 2001, Christal was charged as a result of this incident. On December 17, 2001, she entered a no contest plea to second-degree reckless homicide and child abuse-recklessly causing great harm. On February 1, 2002, she was sentenced to twelve years, six years' initial confinement for Raymon's death, and seven years, three years' initial confinement for Reynaldo's injuries. Her postconviction motion seeking sentence modification was denied. In April 2003, Christal appealed her conviction, challenging only the sentencing decision.
¶5. On January 17, 2003, the petition seeking to terminate Christal's parental rights was filed. It presented three grounds for termination: (1) child abuse for seriously injuring Reynaldo after killing his twin brother, Raymon, pursuant to Wis. Stat. § 48.415(5); (2) failure to assume responsibility for not having a substantial parental relationship with Reynaldo pursuant to Wis. Stat. § 48.415(6); and (3) commission of a serious felony against one of the person's children, pursuant to Wis. Stat. § 48.415(9m). The child abuse ground for termination was voluntarily dismissed at the final pretrial. Also, at that time, Christal moved to dismiss the § 48.415(9m) ground, on the basis that this statute cannot be used until the judgment of conviction is final. She argued that because her conviction was pending on appeal, it was not final. The trial court, relying on Monroe County v. Jennifer V., 200 Wis. 2d 678, 681, 548 N.W.2d 837 (Ct. App. 1996), agreed with Christal's argument and dismissed this termination ground. As a result, the only ground presented to the jury was failure to assume parental responsibility.
¶6. Before trial, the court also granted Christal's motion to exclude all evidence relating to the existence of Raymon, the twin brother. The trial court ruled that although the evidence was relevant, it was unduly prejudicial. The jury trial occurred in June 2003. The jury found that Christal had not failed to assume parental responsibility for Reynaldo. The trial court dismissed the termination petition. Reynaldo, by his guardian ad litem, Petersen, now appeals from that order.

DISCUSSION

A. Dismissal of Grounds for Termination Based on Serious Felony Conviction, Pursuant to Wis. Stat. § 48.415(9m).
¶7. Petersen argues that the trial court erred when it dismissed the termination ground based on Wis. Stat. § 48.415(9m). Christal responds that the trial court's interpretation of the statute was correct-that anytime a parent's direct appeal of a conviction is pending, there is no final judgment to form the basis for grounds to terminate under § 48.415(9m). Christal's argument was premised on the holding in Jennifer V., wherein this court interpreted the term "conviction" as used in Wis. Stat. § 48.415(5) to mean a conviction after the right of direct appeal had been exhausted. Jennifer V., 200 Wis. 2d at 681. The trial court agreed that this holding created a "bright line" rule, which prohibited a termination based on a conviction if the parent's direct appeal was still pending. Based on the reasoning that follows, we clarify the holding in Jennifer V. to prohibit termination based on a conviction when a direct appeal is still pending only if the pending appeal has raised issues challenging the parent's guilt. Accordingly, we reverse the trial court's order and remand for a new trial.
¶8. The interpretation of a statute, here Wis. Stat. § 48.415(9m), presents a question of law, which this court reviews independently. State v. Wittrock, 119 Wis. 2d 664, 669, 350 N.W.2d 647 (1984). Our goal in construing a statute is to ascertain the intent of the legislature. Jennifer V., 200 Wis. 2d at 682. In order to do so, we look first to the plain meaning of the language of the statute. Id. If the language is ambiguous, that is, reasonably susceptible to more than one meaning, we look to the "scope, history, context, subject matter and object of the statute" to determine the intent of the legislature. Id.
¶9. Wisconsin Stat. § 48.415(9m) provides that a jury may find grounds for termination of parental rights based on:
Commission of a serious felony against one of the person's children. (a) Commission of a serious felony against one of the person's children, which shall be established by proving that a child of the person whose parental rights are sought to be terminated was the victim of a serious felony and that the person whose parental rights are sought to be terminated has been convicted of that serious felony as evidenced by a final judgment of conviction.
¶10. It is undisputed in this case that Christal was convicted of a serious felony against one of her children. The issue in this case is whether the termination petition can assert this ground as a basis to terminate Christal's parental rights when, at the time of the termination trial, her conviction was still pending on appeal.
¶11. Jennifer V. held that the term "conviction" used in Wis. Stat. § 48.415(5) was ambiguous because it could reasonably be interpreted either to mean the judgment of conviction entered by the trial court or a conviction after the completion of the appeal as of right. Jennifer V., 200 Wis. 2d at 685. In Jennifer V., we based our analysis on the fact that when a direct appeal is pending, "there is a chance the judgment may be reversed ... which could result in either a guilty verdict or an acquittal." Id. at 688-89. This situation would create a lack of finality and would not promote permanency and stability for the child. Id. at 689-90.
¶12. We now elect to clarify the holding in Jennifer V. to account for the factual scenario presented in this case where a parent is convicted of a serious felony and files a direct appeal, which raises only a sentencing issue that will in no way affect the determination of guilt. Under these circumstances, there is no chance that the judgment of guilt will be reversed. There is no chance that a successful appeal could result in an acquittal of the conviction for the parent. Thus, the pendency of the appeal in this case does not affect the final judgment of guilty rendered by the trial court. In this situation, waiting for the appellate decision would run counter to the legislature's intent that termination cases be handled with great speed to ensure the welfare of the children involved. See Wis. Stat. § 809.107(6)(e).
¶13. Here, it is undisputed that Christal was found guilty of serious battery of one of her children. A judgment of conviction was entered. She filed a direct appeal challenging solely the length of her sentence. There is no possibility that the appeal will result in an innocent parent losing rights to her child. Christal's guilt has been finally determined. Thus, Jennifer V. does not apply to this case. Jennifer V.'s holding is limited to appeals based on guilt or innocence. We hold that when a parent's pending appeal does not raise issues of guilt or innocence, the term "final judgment of conviction" used in Wis. Stat. § 48.415(9m) means the judgment of conviction entered by the trial court, either after "a verdict of guilty by the jury, a finding of guilty by the court in cases where a jury is waived, or a plea of guilty or no contest." Wis. Stat. § 972.13(1).
¶14. Based on the foregoing, we conclude that the trial court erred in dismissing the ground for termination based on the felony conviction. Accordingly, the trial court's order to that effect is reversed and this case is remanded for a new trial based on the ground for termination set forth in Wis. Stat. § 48.415(9m).

B. Exclusion of Evidence of Twin Brother.
¶15. Petersen also argues that the trial court erroneously exercised its discretion when it excluded all evidence related to the existence of the life and death of Reynaldo's twin brother, Raymon. Christal responds that it was reasonable for the trial court to exclude this evidence. We conclude that the trial court's decision constituted an erroneous exercise of discretion.
¶16. Evidentiary decisions are reviewed under the erroneous exercise of discretion standard. LaCrosse County Dep't of Human Servs. v. Tara P., 2002 WI App 84, ¶6, 252 Wis. 2d 179, 643 N.W.2d 194. If the trial court considered the pertinent facts, applied the correct law and used a rational process to reach a reasonable determination, we will uphold its ruling. Id.
¶17. Here, the trial court agreed that the evidence of the existence and death of Raymon was relevant to the failure to assume parental responsibility ground for termination found in Wis. Stat. § 48.415(6), which provides:
Failure to assume parental responsibility (a) Failure to assume parental responsibility, which shall be established by proving that the parent or the person or persons who may be the parent of the child have never had a substantial parental relationship with the child.
(b) In this subsection, "substantial parental relationship" means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child. In evaluating whether the person has had a substantial parental relationship with the child, the court may consider such factors, including, but not limited to, whether the person has ever expressed concern for or interest in the support, care or well-being of the child, whether the person has neglected or refused to provide care or support for the child and whether, with respect to a person who is or may be the father of the child, the person has ever expressed concern for or interest in the support, care or well-being of the mother during her pregnancy.
¶18. The trial court excluded the evidence because it found that the probative value of the evidence of Raymon's death was substantially outweighed by the likelihood of unfair prejudice. The trial court did state that this evidence would be admissible if "the story was incomplete without Raymon," thereby causing a gap which would leave the jury confused.
¶19. We conclude that the story is incomplete without the evidence related to Raymon. Reynaldo was the second baby thrown. The facts demonstrate that Christal first threw Raymon and then buckled Raymon into his car seat. She then picked Reynaldo up and threw him toward his car seat. Because the trial court excluded all evidence of Raymon, Christal's counsel was able to present disingenuous arguments to the jury, including the argument that what occurred to Reynaldo was the result of a "split second of bad judgment." In reality, Christal had a chance to reconsider her behavior before throwing the second baby.
¶20. Further, prior convictions of a parent are not so prejudicial as to outweigh their probative value where the information would lead the jury to an understanding of why children are removed from the parent's home. State v. Quinsanna D., 2002 WI App 318, ¶20, 259 Wis. 2d 429, 655 N.W.2d 752. In Quinsanna, we ruled that evidence of the mother's drug convictions could be admitted into evidence because they related to the reason her children were removed from her home. Id., ¶20. Likewise, Christal's conviction for the death of Reynaldo's twin brother is relevant to whether she provided for the care and well being of the surviving twin.
¶21. Excluding Raymon's existence and death prevented the jury from hearing the complete story. It also resulted in having to redact large portions of documentary evidence, including police and medical reports, to erase any mention of Raymon. The facts of the case had to be altered, resulting in false testimony presented to the jury-one officer had to testify that certain acts Christal did to Raymon were actually done to Reynaldo. Christal was able to testify as to her difficulties during pregnancy, but the jury could not be told that the difficult conditions were typical of multiple birth pregnancies. Christal was allowed to tell the jury that she provided a bassinet for Reynaldo as evidence that she was taking care of his needs. However, the jury could not be told that the single bassinet served as a bed for both twins to share.
¶22. The facts involving these twin boys were so interconnected that excluding the existence and death of one resulted in an untrue and incomplete story being presented to the jury. Although we agree with the trial court that the homicide of Raymon may be prejudicial, we disagree that it was so unduly prejudicial as to substantially outweigh the probative value of the existence and death of Raymon. The evidence related to Reynaldo's twin brother was required for the jury to understand the circumstances surrounding Christal's ability to assume responsibility for Reynaldo. Christal's conduct toward Reynaldo could not be logically separated from his twin brother, Raymon, without the rewriting of history. Accordingly, the trial court erred in excluding such evidence. We reverse the order of the trial court granting the motion to exclude all evidence about Raymon and remand for a new trial consistent with this opinion.
By the Court.-Order reversed and cause remanded for a new trial.
NOTES
[2] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.