# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal Nos.** **2021AP1231** | Cir. Ct. Nos. **2020TP44** |
| **2021AP1232** | **2020TP45** |
| **2021AP1233** | **2020TP46** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |
| | **DISTRICT I** |

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO P.G., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

    V.

P.G.,

      RESPONDENT-APPELLANT.

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.G., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

    V.

P.G.,

---

RESPONDENT-APPELLANT.

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.G., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

   V.

P.G.,

       RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1     BRASH, C.J.[1]  P.G. appeals the orders of the trial court terminating his parental rights to P.G., Jr., and twins J.G. and J.G.  He argues that the petitions filed by the State seeking to terminate his parental rights to the children were insufficiently specific to meet the requirements of WIS. STAT. § 48.42(1)(c)2.  He also argues that the COVID-19 pandemic interfered with his ability to complete the conditions required for reunification with the children, and therefore his right to due process was violated.  Upon review, we affirm.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

## BACKGROUND

¶2    P.G. is the adjudicated father of P.G., Jr., born in May 2017, and the biological father of twins J.G. and J.G., who were born in April 2018.  P.G. and the children's mother, S.T., have lived together since 2017.  S.T.'s parental rights were also terminated under the orders that underlie this appeal.[2]

¶3    The children were detained by the Division of Milwaukee Child Protective Services (DMCPS) in September 2018 after S.T. brought one of the twins to the emergency room at Children's Hospital with severe burns over "a significant portion" of his body.  S.T. explained to hospital staff that she was giving the twin a bath and did not realize the water was too hot.  She did not immediately take the twin to the hospital because she did not think that the burn was significant; however, the skin that was burned was described as "blackened, blistered, and peeling," and required surgery.

¶4    S.T. is "cognitively delayed."  She was charged with felony child neglect causing great bodily harm after the incident with the burn but was found not guilty of that crime due to mental disease or defect and placed in community supervision for five years.  Furthermore, S.T. has an extensive history with DMCPS.  About ten years prior to this case, S.T. had another child who was removed from her custody after suffering first and second-degree burns for which S.T. did not seek medical care; as a result, S.T.'s parental rights to that child and another child were terminated in 2008.  S.T. also had two children die of

---

[2] S.T. also appealed the orders terminating her parental rights in a separate case.

suffocation from co-sleeping, at different times, with one of those deaths considered "suspicious[]."

¶5 There were also current contacts with the family by DMCPS prior to the twin being burned. Because the twins were born prematurely, they have medical conditions, including gastrointestinal issues, which were being monitored by DMCPS, and all three children have chromosomal abnormalities that could result in problems with their vision, which also require regular clinical appointments. DMCPS was contacted in June 2018 after the twins missed two medical appointments and healthcare providers were not able to get in contact with the parents. Then in July 2018 it was reported that the twins were not being fed properly and they were "failing to thrive" as they have problems swallowing.

¶6 After the burn incident, the three children involved in this matter were removed from their parents' custody based on the potential for further "dangerous incidents" that could cause them harm, and petitions for protection or services (CHIPS) were filed.[3] The children were placed in foster care as opposed to remaining with P.G., because it was suspected that P.G. also has cognitive delays, and because at the time, P.G. had an open case in Milwaukee County for disorderly conduct related to a domestic abuse incident occurring in August 2018.[4]

---

[3] Another child of P.G. and S.T.—S., who was born in 2010—was also removed from the home at that time. S. was not included in the orders for the termination of parental rights which underlie this appeal; rather, a transfer of guardianship of S. was pending at the time of these proceedings.

[4] P.G. was charged with disorderly conduct after it was reported that he became "aggressive" with S.T. while he was intoxicated. The case was eventually dismissed.

¶7     Dispositional orders relating to the CHIPS petitions were entered in June 2019, and listed a number of requirements that had to be met by S.T. and P.G. before the children could be returned to their care. Those requirements for P.G. included completing a psychological evaluation, as well as taking parenting classes to assist him in being able to meet the requirements of demonstrating that he and S.T. could provide a safe home for the children and properly care for them. Additionally, there was a requirement for regular visitation with the children.

¶8     P.G. failed to meet those conditions, and petitions for the Termination of Parental Rights (TPR) of S.T. and P.G. with regard to P.G., Jr., J.G., and J.G. were filed in February 2020. In the TPR petitions, the State's alleged grounds for termination included the continuing need of protection or services for the children, pursuant to WIS. STAT. § 48.415(2), and the failure of S.T. and P.G. to assume parental responsibility, pursuant to § 48.415(6).

¶9     Specifically, the petitions alleged that P.G. and S.T. had never been able to progress beyond fully supervised visits with the children. Furthermore, neither parent regularly attended the children's medical appointments that are necessary to monitor their health issues.

¶10    Additionally, the State noted that P.G. "continues to have a relationship and live with" S.T., whose "significant cognitive delays" prevent her from being "trusted to provide safe care for the children if left alone for any period of time." It alleged that P.G. "does not seem to understand that [S.T.]'s deficits and history of maltreatment/neglect impair her ability to understand and safely provide for the children's needs." Moreover, it was "suspected that [P.G.] may have some delays or cognitive limitations as well," but that it was not clear

whether he had completed a psychological evaluation, as required under the CHIPS orders, at the time the TPR petitions were filed.

¶11    At a preliminary hearing on the TPR petitions held in May 2020, counsel for S.T. challenged the sufficiency of the petitions, and P.G. joined that challenge.  The trial court denied the motion.  The court noted that many of the allegations against P.G. were incorporated from the allegations against S.T., but observed that because P.G. had been living with S.T. since 2017, he "has essentially allowed these children to be exposed to that hazardous living environment."  The court further stated that the allegations in the petitions inferred that P.G. "doesn't fully understand the danger the children are subjected to if in fact they were returned to the care of [S.T.]."  Therefore, the court found that the petitions provided sufficiently specific allegations as to the claims against both P.G. and S.T.

¶12    P.G. then filed a separate motion to dismiss the petitions on the ground that the COVID-19 pandemic had "adversely affected" his ability to satisfy the requirements of the CHIPS orders and, as a result, a finding of unfitness would violate his due process rights.  Specifically, P.G. claimed that the visitation condition was interrupted between March and June 2020 when the visits were switched to virtual; that he lost his job due to the pandemic and was unable to pay his rent, resulting in an eviction action being filed against him; and that his subsequent work schedule through a temporary employment agency kept him from timely completing his psychological evaluation.

¶13    At a pretrial conference hearing in January 2021, the trial court denied P.G.'s motion.  The court stated that it was a matter for the fact-finder to determine whether the conditions of the CHIPS orders had been met, and P.G.

conceded that point. P.G. further acknowledged that the TPR petitions, which listed his failure to meet the CHIPS conditions as one ground for his parental rights being terminated, had been filed in February 2020—before the stay-at-home mandates due to the pandemic were imposed—and it was noted that the State's burden for proving that ground would be based on the facts and circumstances at the time the petitions were filed.

¶14 A court trial regarding the grounds phase of the TPR proceedings was set for February 2021. However, just prior to the start of the trial, P.G. opted to enter a no-contest plea to the continuing CHIPS ground, with the State agreeing to dismiss the ground of failure to assume parental responsibility. At the subsequent dispositional phase of the proceedings, the trial court determined that it was in the best interests of the children that both P.G.'s and S.T.'s parental rights be terminated. This appeal follows.

## DISCUSSION

¶15 The sufficiency of a TPR petition is a question of law that we review *de novo*. *See* **Sheboygan Cnty. v. D.T.**, 167 Wis. 2d 276, 282-83, 481 N.W.2d 493 (Ct. App. 1992). Our review of whether a TPR petition is sufficient is dictated by the requirements set forth in WIS. STAT. § 48.42(1). That statute requires that such petitions "set forth with specificity" the name, birth date, and address of the child; the names and addresses of the child's parents; information relating to the current custody of the child, as set forth in WIS. STAT. § 822.29; information regarding whether the child may be subject to the federal Indian Child Welfare Act; and, if the parents are not consenting to the termination of their parental rights, a statement "of the grounds for involuntary termination of parental rights under

[WIS. STAT. §] 48.415 and a statement of the facts and circumstances which the petitioner alleges establish these grounds." *See* WIS. STAT. § 48.42(1).

¶16    Citing *State v. Courtney E.*, 184 Wis. 2d 592, 516 N.W.2d 422 (1994), P.G. asserts that a TPR petition must meet the same requirements as a criminal complaint; that is, it "must contain facts 'which are themselves sufficient or give rise to reasonable inferences which are sufficient to establish probable cause.'" *Id.* at 601 (citation omitted).  However, in *Courtney E.*, our supreme court was reviewing the sufficiency of a CHIPS petition, the requirements for which are governed by WIS. STAT. § 48.255.  *See Courtney E.*, 184 Wis. 2d at 601.  In its analysis of that issue, the court stated that in order for a CHIPS petition to be sufficient, it must satisfy the requirements of § 48.255, and that "[i]n particular, the [CHIPS] petition must provide 'reliable and credible information which forms the basis of the allegations necessary to invoke the jurisdiction of the court …." *Courtney E.*, 184 Wis. 2d at 600 (quoting § 48.255(1)(e)).

¶17    Thus, the court's analysis in *Courtney E.* focused on the statutory requirement for a CHIPS petition to state with specificity the basis for the court to invoke jurisdiction over a child, similar to the requirement of a criminal complaint to specifically state the reasons a court may invoke jurisdiction over a defendant. That requirement is not included in the statutory requirements for a TPR petition, *see* WIS. STAT. § 48.42(1), presumably because at the time a TPR petition is filed, the court has already invoked jurisdiction over the child through a CHIPS petition and resulting dispositional order.

¶18    P.G. argues that because both CHIPS petitions and TPR petitions "arise under Chapter 48, there is no reason to believe that the principles which apply to the sufficiency of one type of Chapter 48 petition would not apply with

equal force to the sufficiency of another type."  We disagree.  The statutes outlining the requirements for each type of petition, while similar, are different with respect to the addition of the requirement relating to the invocation of jurisdiction over the child for CHIPS petitions.  According to the tenets of statutory interpretation, "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.  Adopting P.G.'s interpretation would render the additional requirement for CHIPS petitions regarding the invocation of jurisdiction mere surplusage.  We cannot do that and still give WIS. STAT. § 48.255(1)(e) its "full, proper, and intended effect."  *See State ex rel. Kalal*, 271 Wis. 2d 633, ¶44. Therefore, we reject P.G.'s contention that a TPR petition must rise to the level of a criminal complaint and establish probable cause for the alleged claims.

¶19  We thus review the TPR petitions for compliance with the requirements set forth in WIS. STAT. § 48.42(1); specifically, whether the State set forth with specificity "a statement of the facts and circumstances which the petitioner alleges establish [the] grounds" for the termination of P.G.'s parental rights.  *See* § 48.42(1)(c)2.  Furthermore, "in reviewing the sufficiency of a pleading in a juvenile court proceeding, we may draw reasonable inferences from the allegations in the petition."  *Monroe Cnty. v. Jennifer V.*, 200 Wis. 2d 678, 684, 548 N.W.2d 837 (Ct. App. 1996).

¶20  As the trial court did in its analysis of this issue, we reviewed the factors relating to the grounds alleged by the State to determine whether the petitions provided sufficient notice relative those factors.  We conclude that the allegations in the TPR petitions as discussed in this opinion, and the reasonable

inferences that can be drawn from those allegations, were sufficiently specific to provide P.G. with proper notice as to the grounds for the petitions.

¶21 We next turn to P.G.'s argument that the COVID-19 pandemic interfered with his ability to meet the conditions of the CHIPS orders, and thus the finding that he was an unfit parent violated his right to due process. "Substantive due process has been traditionally afforded to fundamental liberty interests, such as marriage, family, procreation, and bodily integrity," and an analysis of this issue seeks to "balance[] the [S]tate's compelling interests with its chosen method of protecting those interests." *Monroe Cnty. DHS v. Kelli B.*, 2004 WI 48, ¶19, 271 Wis. 2d 51, 678 N.W.2d 831. We independently review challenges to constitutional principles. *State v. Pinno*, 2014 WI 74, ¶36, 356 Wis. 2d 106, 850 N.W.2d 207.

¶22 As the State points out, the current statute relating to the continuing CHIPS ground for TPRs no longer includes a provision relating to whether parents would be able to meet the required conditions in the nine month time period following a fact-finding hearing. Thus, the fact-finder is to consider the facts and circumstances of the case as they existed on the date the TPR petitions were filed. *See* WIS JI—CHILDREN 324. In this case, that was February 27, 2020—before the stay-at-home mandates were imposed due to COVID-19.

¶23 Nevertheless, P.G. had the opportunity to present evidence relating to the hardships he endured as a result of the pandemic at the disposition hearing. *See* WIS. STAT. § 48.427(1). Based on that evidence, he requested an alternative disposition—that instead of granting the TPR petitions, the CHIPS orders could instead remain in effect, such that that he and S.T. could continue working on meeting those conditions. *See id.* However, after weighing all the evidence in

10

terms of the relevant factors for determining whether the parental rights should be terminated, the trial court found that granting the TPR petitions was in the children's best interests.

¶24 Therefore, we conclude that P.G.'s due process rights were not violated during this process. *See* ***Kelli B.***, 271 Wis. 2d 51, ¶19. Furthermore, the "ultimate determination of whether to terminate parental rights" is a discretionary decision that lies with the trial court. ***State v. Margaret H.***, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475. The trial court erroneously exercises its discretion "if it does not examine the relevant facts, applies the wrong legal standard, or fails to use a demonstrated rational process to reach a reasonable conclusion." ***Brown Cnty. v. Shannon R.***, 2005 WI 160, ¶37, 286 Wis. 2d 278, 706 N.W.2d 269. That did not occur here.

¶25 Accordingly, we affirm the trial court's orders terminating the parental rights of P.G. to P.G., Jr., J.G., and J.G.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

11