*In re* O.R., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. A.R., Respondent-Appellant).

Second District   No. 2—01—1084

Opinion filed April 3, 2002.

Josette Skelnik, of Law Offices of Josette Skelnik, of Elgin, for appellant.

Meg Gorecki, State's Attorney, of St. Charles (Martin P. Moltz and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BYRNE delivered the opinion of the court:

Respondent, A.R., appeals the judgment of the circuit court of Kane County finding her to be an unfit parent and terminating her parental rights to her son, O.R. On appeal, respondent contends that section 1(D)(t) of the Adoption Act (750 ILCS 50/1(D)(t) (West 1998)), the statutory provision under which respondent was adjudicated unfit, is unconstitutional as it violates her rights to due process and equal protection. We affirm.

## BACKGROUND

The parties do not dispute some basic background facts. O.R. was born with cocaine in his system on December 17, 1997. O.R. is the youngest of seven children born to respondent and is the fifth of respondent's children to test positive for drugs at birth. On December 23, 1997, the State filed a petition for adjudication of wardship with respect to O.R. Because of various actions by O.R.'s foster parents and paternal grandparents seeking to intervene in the wardship proceedings, a dispositional order was not entered until April 23, 1999. On that date, O.R. was made a ward of the court and placed in the legal custody and guardianship of the Department of Children and Family Services (DCFS).

On June 7, 1999, the State filed an amended petition to terminate respondent's parental rights. The petition alleged that respondent is unfit to parent O.R. pursuant to section 1(D)(t) of the Adoption Act (750 ILCS 50/1(D)(t) (West 1998)), which identifies the following condition as a ground for unfitness:

"(t) A finding that at birth the child's blood, urine, or meconium contained any amount of a controlled substance as defined in subsection (f) of Section 102 of the Illinois Controlled Substances Act, or a metabolite of a controlled substance, *** and that the biological mother of this child is the biological mother of at least one other child who was adjudicated neglected under subsection (c) of Section 2—3 of the Juvenile Court Act of 1987, after which the biological mother had the opportunity to enroll in and participate in a clinically appropriate substance abuse counseling, treatment, and rehabilitation program." 750 ILCS 50/1(D)(t) (West 1998).

Section 2—3(c) of the Juvenile Court Act of 1987 (705 ILCS 405/2—3(c) (West 1998)) generally provides that a newborn infant whose blood, urine, or meconium contains any amount of a controlled substance is neglected.

■ The petition also alleged that respondent is unfit to parent pursuant to section 1(D)(k), which lists as another ground for unfitness the "[h]abitual drunkenness or addiction to drugs *** for at least one year immediately prior to the commencement of the unfitness proceeding."

Section 1(D)(k) also states:

> "There is a rebuttable presumption that a parent is unfit under this subsection with respect to any child to which that parent gives birth where there is a confirmed test result that at birth the child's blood, urine, or meconium contained any amount of a controlled substance as defined *** and the biological mother of this child is the biological mother of at least one other child who was adjudicated a neglected minor under subsection (c) of Section 2—3 of the Juvenile Court Act of 1987." 750 ILCS 50/1(D)(k) (West 1998).

Several DCFS caseworkers testified at the hearing. Their testimony revealed the following. After several years of failing drug tests, failing to complete DCFS-recommended treatment programs successfully, and giving birth to children born with drugs in their systems, respondent began to rehabilitate herself. By March 1998, respondent had successfully completed an inpatient treatment program and had enrolled in a subsequent program. Respondent remains actively involved in treatment. Between January and September 1999, respondent tested negative for drugs and had done everything else required of her, including maintaining stable employment.

Respondent testified that she was a recovering addict and alcoholic and admitted that, between O.R.'s birth and February 3, 1998, she had used drugs three times. However, she testified that she had been "clean" for 26 months and continued to attend meetings on a regular basis 4 times a week. Respondent was currently living on her own and had been working as a dietary aide for a nursing home for the past two years.

Following the hearing, the trial court expressed concern as to the constitutionality of section 1(D)(t). The court stated that, because of respondent's "outstanding" rehabilitation efforts, it did not want to terminate respondent's parental rights. In its order, the court noted that the State met the initial burden under section 1(D)(t). However, because section 1(D)(k) addresses substantially the same conduct as section 1(D)(t), the court read the rebuttable presumption in 1(D)(k) into section 1(D)(t) and found that respondent overcame the presumption of unfitness. Accordingly, the court adjudicated respondent fit.

The State filed a motion to reconsider, arguing that there is no rebuttable presumption and the statute must be applied as written, without any exceptions regarding a parent's recent recovery efforts. The State suggested that evidence of respondent's recovery efforts could be considered at the "best interests" stage. Following argument, the court reconsidered its ruling and entered an order finding respondent unfit pursuant to section 1(D)(t).

At the close of the best interests hearing, the court found that it was not in O.R.'s best interest to terminate respondent's parental rights. The State appealed, and we reversed the court's judgment and remanded the cause for a new best interests hearing (*In re O.R.*, No. 2—00—0971 (2001) (unpublished order under Supreme Court Rule 23)). We concluded that the court incorrectly relied too heavily upon respondent's progress in overcoming her drug addiction and that such evidence, standing alone, was not sufficient to warrant a decision that a parent's rights should not be terminated.

Following a rehearing on remand, the court found that it was in O.R.'s best interest to terminate respondent's parental rights. Respondent timely appeals.

## ANALYSIS

■ Respondent's sole contention on appeal concerns the constitutionality of section 1(D)(t) of the Adoption Act. As this issue was presented neither to the trial court nor to this court in the first appeal, we must consider whether it is waived.

Generally, constitutional issues not presented to the trial court are deemed waived and may not be raised for the first time on appeal. *Villareal v. Peebles*, 299 Ill. App. 3d 556, 560 (1998). However, because the issue is one of first impression in Illinois and raises a clear question of law that may be resolved without further input from the trial court, and because the waiver rule is a limitation on the parties and not the court, we will address the merits of respondent's constitutional claim. See *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480 (1991); *Ward v. Community Unit School District No. 220*, 243 Ill. App. 3d 968, 974 (1993).

■ We note that, because respondent does not designate whether there is a violation of the United States or Illinois Constitution, we will analyze the claim under the Illinois Constitution. We thus begin our analysis with the general rule that all statutes are presumed to be constitutional. *In re R.C.*, 195 Ill. 2d 291, 296 (2001). The party challenging the constitutionality of a statute bears the burden of rebutting this presumption and clearly establishing a constitutional violation.

*Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 351 (1999). Because the issue is one of law, our review is *de novo. R.C.*, 195 Ill. 2d at 296. We must construe acts of the legislature so as to affirm their constitutionality and validity if we can reasonably do so. *R.C.*, 195 Ill. 2d at 296-97.

## I. EQUAL PROTECTION

■ Respondent first contends that section 1(D)(t) violates the constitutional guarantee of equal protection (Ill. Const. 1970, art. I, § 2). The guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner. *R.C.*, 195 Ill. 2d at 309. Therefore, the government may not accord different treatment to persons who have been placed by statute into different classes on the basis of criteria wholly unrelated to the purpose of legislation. *R.C.*, 195 Ill. 2d at 309. However, the equal protection clause does not forbid the legislature from drawing proper distinctions in legislation among different categories of people. *R.C.*, 195 Ill. 2d at 309.

■ The level of scrutiny applied in reviewing legislative classifications under equal protection guarantees depends on the nature of the classification. *R.C.*, 195 Ill. 2d at 309. Because a fundamental interest is involved in termination of parental rights cases, strict scrutiny is employed here. See *R.C.*, 195 Ill. 2d at 304, 309. To survive strict scrutiny under equal protection principles, the means employed by the legislature must be necessary to advance a compelling state interest and the statute must be narrowly tailored to the attainment of the legislative goal. *In re Estate of Hicks*, 174 Ill. 2d 433, 438 (1996).

Section 1(D)(t) creates a classification of mothers who ingest drugs during pregnancy, give birth to infants who are born with drugs in their systems, have at least one other child adjudicated neglected because the child was born with drugs in his system, and have the opportunity thereafter to enroll and participate in substance abuse treatment. Initially, then, an equal protection analysis must identify the purpose of the legislation.

■ Clearly, the State, as *parens patriae*, has a compelling interest in protecting children from abuse, both after and before the abuse occurs. *In re J.B.*, 328 Ill. App. 3d 175, 191 (2002). Section 1(D)(t) promotes that interest by allowing courts to consider a mother's abuse of one child when determining whether the mother is also fit to parent her other current or future children.

■ Respondent appears to argue that the State does not have such a compelling interest because a recent study has shown that prenatal cocaine exposure does not have the severe consequences for the child's long-term health as previously found. Respondent identifies this recent

scientific study in her reply brief and attaches an article about the study to the appendix. We agree with the State that this argument is improper and should be stricken. Attachments to briefs not otherwise of record are not properly before a reviewing court and cannot be used to supplement the record. *People v. Lutz*, 103 Ill. App. 3d 976, 979 (1982). Additionally, the long-term effect of prenatal exposure to cocaine is a question of fact that is beyond our scope of review in this case. Accordingly, we grant the State's motion to strike the appendix and the reference made to its contents in respondent's reply brief, which we previously ordered to be taken with the case.

■ Having determined that the classification is necessary to promote a compelling state interest, we next must determine whether the statute distinguishes classes of people based on criteria related to the purpose or whether the classes cause similarly situated people to be treated in a dissimilar manner. Respondent claims she has been treated more harshly than a mother who ingests drugs after her child is born, a father who uses drugs at any time during the time the biological mother is pregnant, and a mother who ingests drugs early in the pregnancy and the child does not test positive for drugs at birth. Respondent fails to show how these groups are similarly situated to the class identified by section 1(D)(t).

Section 1(D)(t) is narrowly tailored to attain the legislative goal of protecting children from abuse by identifying as unfit those mothers who harm their children by using drugs during pregnancy and who previously gave birth to a child who was adjudicated neglected due to that child being born with a controlled substance in his or her system. Respondent fails to understand that the statute distinguishes between classes of people based on the risk of the direct physical harm to a child when the mother passes drugs to the child *in utero*. None of the complained-of disparate groups are similarly situated because the drug abuse by the members of these classes does not directly harm the health of the child. When a parent's drug abuse is not a direct physical impact on the child, that parent may be found unfit under other sections of the Adoption Act. See, *e.g.*, 750 ILCS 50/1(D)(k) (West 1998). Moreover, although medical proof is not always certain, failing to identify every mother that should be in the class of unfit mothers who use drugs during gestation does not mean that the classification system itself is suspect. Respondent has not carried her burden of clearly establishing an equal protection violation.

## II. DUE PROCESS

■ Respondent next argues that section 1(D)(t) violates her substantive due process rights (Ill. Const. 1970, art. I, § 2). Employing

the strict scrutiny test, we must determine whether section 1(D)(t) is necessary to a compelling state interest and is narrowly tailored thereto, *i.e.*, whether the legislature uses the least restrictive means consistent with the attainment of its goal. *R.C.*, 195 Ill. 2d at 303. As previously stated, the compelling state interest is the protection of the child from harm, and the legislature protects that interest by declaring unfit those mothers who pose a risk to the safety and well-being of their children.

Respondent argues that section 1(D)(t) imposes an impermissible irrebuttable presumption of unfitness because it does not give her the opportunity to rebut the presumption of unfitness with her current ability to discharge her parental responsibilities. We reject this argument.

In *J.B.*, the court addressed an argument similar to respondent's argument here regarding "irrebuttable" presumptions. That case, however, involved section 1(D)(q) of the Adoption Act, in which a parent is found unfit if the parent has been criminally convicted of aggravated battery. 750 ILCS 50/1(D)(q) (West 1998). The respondent in *J.B.* was convicted of aggravated battery for hitting her oldest child. The trial court granted the State's subsequent motion for summary judgment on its petition to declare the respondent unfit to parent both the child she hit and another child born to the respondent after she was convicted.

On appeal, the respondent argued that section 1(D)(q) was unconstitutional in violation of the due process and equal protection clauses because it presumed that she was unfit without regard to evidence of rehabilitation and without providing a specific time limit within which the prior conviction could be considered. The First District Appellate Court rejected this argument. It held that, regardless of any mitigating facts or time limitation, section 1(D)(q) does not violate the constitution because the statute promotes the State's compelling interest in protecting children from abuse, both before and after the abuse occurs, by allowing courts to consider a parent's abuse of one child when determining whether the parent is fit to parent his or her other current or future children. *J.B.*, 328 Ill. App. 3d at 191. The court further concluded that the procedures of the Adoption Act do not automatically result in the termination of parental rights following a conviction of one of the offenses listed in section 1(D)(q) because a parent still possesses the right and opportunity at a best interests hearing to present evidence of her rehabilitation and her desire and ability to be a parent to her children. *J.B.*, 328 Ill. App. 3d at 191.

It is clear from the case of *J.B.* that, under section 1(D)(q), a trial court is permitted to make a finding of unfitness based solely on a

parent's status before the abuse occurs, even before a second child is abused. The State therefore does not have to wait for the abuse to happen. *J.B.*, 328 Ill. App. 3d at 191. See also *In re Ray*, 88 Ill. App. 3d 1010, 1013-14 (1980) ("per se" factors for finding unfitness as a matter of law under the Adoption Act are not unconstitutional). In the present case, however, the State does have to wait for the abuse to happen because section 1(D)(t) does not permit a finding of unfitness unless a subsequent child tests positive for drugs in his or her system. Unlike a parent who is found unfit under section 1(D)(q), a parent who is found unfit under section 1(D)(t) has an opportunity to rehabilitate herself before another child is born. Therefore, section 1(D)(t) afforded respondent even more procedural safeguards than are provided by section 1(D)(q).

We also reject respondent's reliance on *In re H.G.*, 197 Ill. 2d 317 (2001). In *H.G.*, the supreme court struck down on substantive due process grounds section 1(D)(m—1) of the Adoption Act (750 ILCS 50/1(D)(m—1) (West 1998)) because the statute was not narrowly tailored to the compelling goal of identifying unfit parents and protecting children. *H.G.*, 197 Ill. 2d at 333. Section 1(D)(m—1) provided in part that a person could be found unfit if the child of that person had been in foster care for 15 months out of any 22-month period. The court noted that many of the statutory time periods in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 1998)) employ a framework for some type of parental conduct, inaction, or inability relating to the competence or the care given to a child. *H.G.*, 197 Ill. 2d at 333. The court found that section 1(D)(m—1), in contrast, measured only the time that a child was in foster care without regard to whether the parents posed a danger to their children's health or safety. *H.G.*, 197 Ill. 2d at 333.

Here, section 1(D)(t) provides a narrowly tailored means of identifying parents who pose a danger to their children's health and safety. It provides a time framework that is tied to the mother's conduct, inaction, or inability that relates to her competence to care for her child in the future, as well as to the care she has already given her child *in utero*. The time period is not specifically expressed in terms of a specific number of months. However, it is implied, given the gestation period between births and the requirement that the mother has the opportunity to participate in drug rehabilitation services.

In conclusion, it is clear that the statute is narrowly tailored to meet the compelling state interest of protecting a child from abuse and that the legislature used the least restrictive means consistent with the attainment of its goal. The statute identifies the interest to be protected, provides a mother with notice after she harms a previous

child by using drugs that passed to that child *in utero*, and provides an opportunity to correct the abuse before a mother passes drugs to another child through pregnancy. The testing of a child at birth further ensures that the least restrictive means is used to attain the legislative goal. Respondent has not carried her burden of clearly establishing a due process violation.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and KAPALA, JJ., concur.